IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE FERGERSTROM, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> PNC BANK, N.A., a national banking association; DEREK W.C. WONG; and DOE DEFENDANTS 1-50, <br><br> Defendants. | CIVIL NO. 13-00526 DKW-RLP <br><br> FINDINGS AND RECOMMENDATION TO (1) DENY PLAINTIFF'S MOTION FOR AN ORDER OF REMAND AND (2) GRANT PNC'S MOTION TO STAY PENDING APPEAL OF RELATED CASES |

FINDINGS AND RECOMMENDATION TO
(1) DENY PLAINTIFF'S MOTION FOR AN ORDER OF REMAND AND
(2) GRANT PNC'S MOTION TO STAY PENDING APPEAL OF RELATED CASES[1]

Before the Court are two motions: (1) Plaintiff Wayne Fergerstrom's, individually and on behalf of all others similarly situated ("Plaintiff"), Motion for an Order of Remand, filed on November 8, 2013 ("Remand Motion"); and (2) Defendant PNC Bank, National Association's ("PNC") Motion to Stay Pending Appeal of Related Cases or, in the Alternative, for an Extension of Time,

---

[1] Within fourteen (14) days after a party is served with a copy of the Findings and Recommendation, that party may, pursuant to 28 U.S.C. § 636(b)(1)(B), file written objections in the United States District Court. A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the Findings and Recommendation. If no objections are filed, no appellate review will be allowed.

filed on November 5, 2013 ("Stay Motion") (collectively "Motions").  See ECF Nos. 11, 18.

The Court found these matters suitable for disposition without a hearing pursuant to Local Rule 7.2(d) of the Local Rules of Practice for the United States District Court for the District of Hawaii.  See ECF Nos. 13, 19.  On November 22, 2013, PNC filed its memorandum in opposition to Plaintiff's Remand Motion, and on December 6, 2013, Plaintiff filed his reply.  See ECF Nos. 33, 44.  Per the Court's request, the parties filed supplemental briefs regarding the Remand Motion on January 13, 2014 (PNC) and January 27, 2014 (Plaintiff).  See ECF Nos. 48, 54.  On November 7, 2013, Defendant Derek W.C. Wong ("Defendant Wong") filed a substantive joinder to PNC's Stay Motion, on November 19, 2013, Plaintiff filed its opposition, and on December 3, 2013, PNC filed its reply.  See ECF Nos. 15, 25, 42.  Based on the following, and after careful consideration of the Motions, the supporting and opposing memoranda, declarations, and exhibits attached thereto, and the record established in this action, the Court FINDS AND RECOMMENDS that Plaintiff's Remand Motion be DENIED and PNC's Stay Motion be GRANTED.

BACKGROUND

**A.  The Fergerstrom Property Foreclosure**

In May 2007, Plaintiff entered into a promissory note and mortgage in the amount of $585,000 in favor of PNC's

predecessor National City Bank, N.A. ("NCB") on his property located in Kailua, Hawaii ("Fergerstrom Property"). Compl., ECF No. 1-1, ¶ 26. Plaintiff's mortgage gave the mortgagee a power of sale in the event he defaulted on the note. Id. ¶ 27. Subsequently, PNC, acting through Defendant Wong, an attorney at the law firm "Routh Crabtree & Olson," commenced foreclosure proceedings against Plaintiff and his property pursuant to Hawaii Revised Statutes ("HRS") and the power of sale contained in the mortgage. Id. ¶¶ 15, 29.

As part of the foreclosure proceedings, PNC recorded a "Notice of Mortgagee's Intention to Foreclose Under Power of Sale" ("Notice of Sale") on July 10, 2009. Id. ¶ 30. Among other things, the Notice of Sale indicated that the Fergerstrom Property would be sold in "AS IS" and "WHERE IS" condition and "without covenant or warranty, either express or implied, as to title, possession, or encumbrances." Id. The Notice of Sale thus indicated that the Fergerstrom Property would be conveyed via quitclaim deed. Id. ¶ 31.

The Notice of Sale was published in the Honolulu Star-Bulletin, a daily newspaper, on August 10, 2009, August 17, 2009, and August 24, 2009. Id. ¶ 44. The Notice of Sale advertised a public auction for the Fergerstrom Property to be held at noon on September 9, 2009, id. ¶ 41, but the auction was postponed until April 12, 2010. Id. ¶ 46. PNC did not publish any notice of the postponed auction's rescheduled date and time. Id. At the

auction of the Fergerstrom Property, PNC was the successful bidder with a credit bid of $639,637.97.  Id. ¶ 35.  The next day, PNC conveyed the Fergerstrom Property to its nominee, Federal National Mortgage Association ("Fannie Mae"), via quitclaim.  Id. ¶ 53.  On November 15, 2010, Fannie Mae sold the Fergerstrom Property for $645,000 and recorded the sale via Limited Warranty Deed.  Id. ¶ 54.

**B.    Plaintiff's Allegations Against Defendants**

Plaintiff's lawsuit alleges a putative class action against PNC and Defendant Wong (collectively "Defendants") consisting of:

> All consumers within the meaning of H.R.S. Chapter 480 who owned real property in Hawai'i and who were subjected to a notice of foreclosure sale under H.R.S. § 667-5 prepared by Defendant Derek Wong or the law firm of Routh Crabtree & Olson by or on behalf of Defendant PNC (or NCB before its merger with PNC) claiming for PNC or NCB the rights of a mortgagee with a power of sale and as to whose property Defendant PNC or NCB thereby caused the sale or transfer of the property on or after September 9, 2009.

Id. ¶ 12.  The Complaint alleges that the there are 40-50 properties involved and that the number of owners who fall within the class definition is "more than 50 and less than 100."  Id. ¶ 15.

Plaintiff alleges that Defendants "breached their duties to act in good faith to sell the properties to the owners' best advantage and to use reasonable diligence to secure the best

4

possible price" by adopting foreclosure policies and practices designed to deter public participation and "chill" bid prices at non-judicial auctions.  Id. ¶ 9.  These policies and practices allegedly included: advertising the auctions of the properties by quitclaim deed when buyers would actually receive limited warranty deeds; frequently postponing auctions without publishing notices of the auctions' new times and dates; and including misleading terms of sale regarding the timing of the close of sales, liquidated damages should the sales not close within 30 days, and a limitation on bidders' remedies in the event the sales did not close.  Id.  As a result, Defendants allegedly created a non-judicial foreclosure system that had the effect of reducing competition between PNC and third-party bidders at non-judicial auctions, thereby allowing PNC the opportunity to purchase properties on credit bid at lower prices and realize greater profits on resale, and depressed the market as a whole. Id. ¶¶ 10-11, 24, 56, 64.  Plaintiff asserts that the foreclosure sales by PNC were contrary to the foreclosing mortgagee's duties under the power of sale and HRS § 667-5 and constitute an unfair and/or deceptive act or practice within the meaning of HRS Chapter 480.  Id. ¶¶ 38, 48, 50, 56.

    **C.**    **Procedural History**

On September 9, 2013, Plaintiff, a Hawaii resident, filed his Complaint against PNC, a foreign corporation, in state

court.  See Compl.  On October 10, 2013, PNC filed its Notice of Removal, contending that this Court has diversity jurisdiction under 28 U.S.C. § 1332 because Defendant Wong was fraudulently joined to this action.  See ECF No. 1.  On November 7, 2013, PNC filed a Supplemental Jurisdictional Statement, asserting that this Court also has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ("CAFA").  See ECF No. 16.

On November 5, 2013, PNC filed its Stay Motion, seeking to stay this case pending the appeal of three other similar class actions to the Ninth Circuit.  See ECF No. 11.  On November 6, 2013, Defendant Wong filed a motion to dismiss Plaintiff's Complaint, which is presently set for hearing on March 28, 2014.  See ECF Nos. 14, 17.  Plaintiff filed his Remand Motion on November 8, 2013.  See ECF No. 18.

## LEGAL STANDARD

The removal statute, 28 U.S.C. § 1441, provides, in pertinent part: "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  There is a "strong presumption" against removal, and "[f]ederal jurisdiction must be rejected if there is any doubt as

to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). See also Luther v. Countrywide Home Loans Servicing, LP, 533 F.3d 1031, 1034 (9th Cir. 2008) ("[R]emoval statutes are strictly construed against removal."). "The presumption against removal means that the defendant always has the burden of establishing that removal is proper." Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009). "If at any time before the final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

## ANALYSIS

**I.   Remand Motion**

   **A.   CAFA Jurisdiction**

"CAFA provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" Standard Fire Ins. Co. v. Knowles, 133 S. Ct. 1345, 1348 (2013) (citing 28 U.S.C. § 1332(d)(2), (d)(5)(B)). It is the proponent's burden to establish a prima facie case of CAFA jurisdiction. Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1021 (9th Cir. 2007) (citing Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 684–85 (9th Cir. 2006)).

Where it is unclear or ambiguous from the face of a state court complaint that jurisdictional requirements are met, the removing party must prove such requirements by a preponderance of the evidence. Guglielmino v. McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007); Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003). Under this burden, the defendant must provide evidence establishing that it is "more likely than not" that jurisdiction exists. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996). Where CAFA jurisdiction is not facially apparent, the district court "may consider facts in the removal petition, and may 'require parties to submit [relevant] summary-judgment-type evidence.'" Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997).

**1. Amount in Controversy and Citizenship Requirements**

As an initial matter, Plaintiff does not dispute that PNC has made a prima facie showing of the amount in controversy and citizenship requirements for CAFA jurisdiction, and the Court finds that these requirements are satisfied. First, in the context of claims seeking to void a foreclosure sale, such as here, the amount in controversy is the value of the property. Chapman v. Deutsche Bank Nat'l Trust Co., 651 F.3d 1039, 1045 n.2 (9th Cir. 2011). In November 2010, Plaintiff's property was sold for $645,000. Compl. ¶ 54. Plaintiff alleges that there are

approximately 40-50 properties at issue, see Compl. ¶ 15, so even at the low end, the $5 million threshold is easily met.  See also Wong Supp. Decl. Summ. Chart (stating that lowest total foreclosure sale amount, consisting of 69 properties, exceeded $22 million).  Second, minimal diversity is clearly present, as Plaintiff alleges that he is a Hawaii citizen and that PNC's principal place of business is Pennsylvania.  See Compl. ¶¶ 3-4.

### 2. Numerosity

Plaintiff contends that PNC failed to make the requisite showing of numerosity for CAFA to apply.  "CAFA provides that in order for a class action to be removable, 'the number of members of all proposed plaintiff classes' must be 100 or greater, § 1332(d)(5)(B), and it defines 'class members' to mean 'the persons (named or unnamed) who fall within the definition of the proposed or certified class,' § 1332(d)(1)(D)." Miss. ex rel. Hood v. AU Optronics Corp., 134 S. Ct. 736, 742 (2014).  District courts have applied the preponderance of the evidence standard to CAFA's 100-person numerosity requirement. See, e.g., Kitazato v. Black Diamond Hospitality Invs., LLC, Civ. No. 09-00271 DAE-LEK, 2009 WL 3824851, at *1 (D. Haw. Nov. 13, 2009); Coit v. Fidelity Assurance Assocs., LLC, No. 08-0285, 2008 WL 3286978, at *4 (N.D. Cal. Aug. 6, 2008).

The Supreme Court has recently emphasized that, when a class has not already been certified, CAFA jurisdiction is

determined by the definition of the *proposed* plaintiff class. Standard Fire, 133 S. Ct. at 1348 (quoting 28 § 1332(d)(1)(D)). Contrary to Plaintiff's assertion,[2] CAFA's jurisdictional facts are assessed at the time of removal, and the district court is not divested of jurisdiction even if class certification is subsequently denied.  See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co., 602 F.3d 1087, 1092 (9th Cir. 2010) ("If a defendant properly removed a putative class action at the get-go, a district court's subsequent denial of Rule 23 class certification does not divest the court of [CAFA] jurisdiction."); Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1268 n.12 (11th Cir. 2009) ("Even if it were later found that the narrowed, Florida-only class numbers fewer than 100, the § 1332(d)(5)(B) limitation applies only to 'proposed' plaintiff classes (as opposed to classes actually certified or that go to trial); jurisdictional facts are assessed at the time of removal; and post-removal events (including non-certification, de-certification, or severance) do not deprive federal courts of subject matter jurisdiction.").

---

[2]  See Pl.'s Supp. Brief 2 ("The question presented is: if and when a class is certified, how many people will be in it? . . . It is not enough for PNC to identify 100 or more mortgagors; it must show that there will be 100 or more ***in the class***.") (emphasis in original).

Accordingly, the Court looks to the plain language of Plaintiff's Complaint to determine whether CAFA numerosity is met. Here, Plaintiff proposes a class consisting of:

> All consumers within the meaning of H.R.S. Chapter 480 who owned real property in Hawai'i and who were subjected to a notice of foreclosure sale under H.R.S. § 667-5 prepared by Defendant Derek Wong or the law firm of Routh Crabtree & Olson by or on behalf of Defendant PNC (or NCB before its merger with PNC) claiming for PNC or NCB the rights of a mortgagee with a power of sale and as to whose property Defendant PNC or NCB thereby caused the sale or transfer of the property on or after September 9, 2009.

Compl. ¶ 12. Plaintiff's Complaint alleges that the number of owners who fall within the proposed class definition is "more than 50 and less than 100." Compl. ¶ 15. After a review of its records, PNC states that, depending on the Court's interpretation of the class definition, there are between 108 and 144 putative class members. See PNC Supp. Brief 2-3; Wong Supp. Decl. Summ. Chart. The Court addresses Plaintiff's challenges to PNC's list of 144 potential class members, as identified as Sale Nos. 1-91 by PNC, below.

### a. PNC as Loan Servicer

PNC conducted 16 non-judicial foreclosure sales involving 26 mortgagors (Sale Nos. 75-91) in its capacity as a loan servicer to other entities that were named in the notices as mortgagees. Plaintiff contends that these mortgagors should be excluded from the putative class because the actual mortgagee in

11

those instances was not PNC or NCB.  The Court disagrees.
According to Plaintiff's proposed definition, the notices need
only be prepared on behalf of PNC or NCB "claiming for PNC or NCB
the rights of *a* mortgagee."  Compl. ¶ 12 (emphasis added).  The
definition is not limited to those notices in which PNC or NCB is
actually the mortgagee itself.  As a loan servicer, PNC claimed
the rights of the mortgagees in the notices, and therefore, these
sales fall into the express scope of Plaintiff's class
definition.  Accordingly, the mortgagors in Sale Nos. 75-91
should be included in the putative class.

### b. NCRES as Mortgagee

Plaintiff also contends that five sales brought by
National City Real Estate Services, LLC ("NCRES"), a former NCB
subsidiary, as mortgagee involving nine mortgagors (Sale Nos. 17,
70-73) should be excluded from the putative class.  PNC has
produced evidence showing that after NCRES dissolved on November
7, 2009, all of its assets and liabilities were transferred to
PNC.  See Cunningham Decl. ¶ 2.  Since these five sales occurred
after November 7, 2009, PNC was entitled to initiate foreclosure.
See 12 U.S.C. § 215(e).  Having already found that Plaintiff's
class definition is not limited to those notices in which PNC or
NCB is actually the mortgagee itself, the Court further finds
that Sale Nos. 17 and 70-73 should be included in the putative
class.

### c. Foreclosures Conducted by RCO Hawaii

Plaintiff objects to including a sale conducted by an attorney from the law firm of RCO Hawaii LLLC involving two mortgagors (Sale No. 74). PNC claims that this sale should count toward the putative class because there was no "Routh Crabtree & Olson" law firm during the relevant time period, see Wong Decl. ¶ 6, and it is reasonable to assume that Plaintiff intended to include both the older RCO entity, "Routh Crabtree Olsen, P.S." ("Old RCO") as well as the newer entity "RCO Hawaii, LLLC" ("New RCO"). See id. ¶ 2. Defendant Wong was an attorney at Old RCO from May 21, 2009 to July 31, 2010, and has been employed by New RCO since August 1, 2010. See id. ¶¶ 1-2. Given that all sales conducted by Defendant Wong are expressly included in the proposed class, and Defendant Wong's relationship with both Old RCO and New RCO, the Court finds that Sale No. 74 should be included in the putative class.

### d. Deceased Property Owners

Two mortgagors involved in one sale (Sale No. 36) are deceased. The Court will exclude these two mortgagors from the putative class, thereby reducing the size of the putative class from 144 to 142.

### e. Balanon Property

Although the foreclosure notice for the sale involving the Balanon property (Sale No. 37) lists two individuals as the

mortgagors, see Wong Decl. Ex. 2 to Part 5 of 11, ECF No. 50-1, at 80, Plaintiff has produced evidence that only one of these individuals was actually a mortgagor for the property. Therefore, the Court will exclude one mortgagor from the putative class, thereby reducing the size of the putative class from 142 to 141.

### f. Standing Arguments

Finally, Plaintiff contends that two groups of mortgagors should be excluded from the putative class based on their lack of standing to pursue the instant claims. First, Plaintiff asserts that 11 mortgagors should be excluded because they filed for bankruptcy following their foreclosure sale.[3] Second, Plaintiff argues that another four mortgagors should be excluded because they still retain title to their homes.[4] The Court declines to reach Plaintiff's standing arguments.[5] Having

---

[3] Although Plaintiff's supplemental memorandum, see Pl.'s Supp. Mem. 4, and his counsel's declaration, see Bickerton Supp. Decl. ¶ 2, state that there are 11 mortgagors who filed for bankruptcy, the attached bankruptcy records appear to show only 10 mortgagors. See Bickerton Supp. Decl. Ex. 1 (attaching records related to Sale Nos. 7, 8 (2 mortgagors), 22, 26, 29 (2 mortgagors), 38, 58, and 60).

[4] Plaintiff's supplemental memorandum identifies six mortgagors who fall into this category, but two mortgagors involved in the Gumtang sale (Sale No. 29) also filed for bankruptcy and will not be double counted for numerosity purposes.

[5] The Court also declines to reach whether it would be appropriate, at the removal stage, to engage in a substantive standing analysis for individual putative class members.

already found that PNC has presented sufficient evidence that the putative class consists of 141 members, even if these additional 15 mortgagors were excluded, the putative class would still total 126 members.  Therefore, the Court concludes that CAFA's 100-person numerosity requirement is satisfied.

### 3. Timeliness

Plaintiff's final objection to CAFA jurisdiction is that PNC's Supplemental Jurisdictional Statement was untimely because it was filed more than 30 days after PNC received Plaintiff's Complaint.

Until the Ninth Circuit's recent decision in Roth v. CHA Hollywood Medical Center, L.P., 720 F.3d 1121 (9th Cir. 2013), there were only two periods during which a case could be removed: 30 days from a defendant's receipt of the initial pleading if the initial pleading is removal on its face, under 28 U.S.C. § 1446(b)(1); or 30 days from a defendant's receipt of an amended pleading or other paper from which it may first be ascertained that the case is removable, under 28 U.S.C. § 1446(b)(3).  In Roth, the Ninth Circuit created a third period for removal, holding that "a defendant who has not lost the right to remove because of a failure to timely file a notice of removal

---

Although Plaintiff has cited case law in which courts have analyzed standing at the class certification stage, see, e.g., Pl.'s Supp. Brief 4 (citing Mazza v. Am. Honda Motor Co., 666 F.3d 581, 594 (9th Cir. 2012)), Plaintiff's authorities do not appear to address standing at the preliminary stage of removal.

under § 1446(b)(1) or (b)(3) may remove to federal court when it discovers, based on its own investigation, that a case is removable." Id. at 1123. Indeed, when the initial pleading or other document is "indeterminate" with respect to removability, a defendant does not lose the right to remove because it did not conduct an investigation and file a notice of removal within 30 days of receiving the indeterminate document. Id. at 1125.

> Specifically, the court stated:
>
> We conclude that §§ 1441 and 1446, read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines. For good reason, § 1446(b)(1) and (b)(3) place strict limits on a defendant who is put on notice of removability by a plaintiff. A defendant should not be able to ignore pleadings or other documents from which removability may be ascertained and seek removal only when it is advantageous for it to do so. But neither should a plaintiff be able to prevent or delay removal by failing to reveal information showing removability and then objecting to removal when the defendant has discovered that information on its own.

Id.

Here, Plaintiff contends that PNC's assertion of CAFA jurisdiction was untimely because PNC already removed the case based on a fraudulent joinder theory. However, it is clear that the instant Complaint was indeterminate as to CAFA jurisdiction -- in fact, Plaintiff affirmatively pled that the proposed class consisted of "less than 100" persons. Compl. ¶ 15. Moreover,

PNC did not run afoul of either of the 30-day deadlines of § 1446(b)(1) and (b)(3). Rather, the record reflects that PNC timely removed on fraudulent joinder grounds within 30 days of receiving the Complaint, conducted its own investigation as to CAFA numerosity, and filed a Supplemental Jurisdictional Statement asserting CAFA before Plaintiff even sought remand. Given this timeline, the "abusive gamesmanship" that the removal time limits were intended to prevent, under which a defendant could delay filing a notice of removal until it is strategically advantageous to do, see Roth, 720 F.3d at 1126, was not present.

Under these circumstances, the Court finds that PNC's assertion of CAFA jurisdiction was timely. See Rea v. Michaels Stores, Inc., --- F.3d ----, 2014 WL 607322, at *2-3 (9th Cir. Feb. 18, 2014) (holding that when controlling law at the time the defendant received the complaint did not affirmatively reveal on its face the facts necessary for federal court jurisdiction, the initial 30-day removal period was never triggered and defendant's second CAFA removal was timely); Kirkbride v. Cont'l Cas. Co., 933 F.2d 729, 732 (9th Cir. 1991) ("A defendant who fails in an attempt to remove on the initial pleadings can file a removal petition when subsequent pleadings or events reveal a *new* and *different* ground for removal.") (italics in original) (alterations omitted). Accordingly, having found that PNC has established by a preponderance of evidence that this action meets

CAFA's minimal diversity, amount in controversy, and numerosity requirements, and having further found that PNC's assertion of CAFA jurisdiction was timely, the Court concludes that it has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) and that remand should be denied.

**B.   Fraudulent Joinder and Attorneys' Fees**

In light of the Court's finding that it has CAFA jurisdiction over this action, the Court need not address PNC's alternative fraudulent joinder argument.  Similarly, because this Court recommends that remand be denied, Plaintiff's request for attorneys' fees and costs, pursuant to 28 U.S.C. § 1447(c), should also be denied.

**II. Stay Motion**

PNC's Stay Motion seeks to stay this action pending the appeal of three similar class actions to the Ninth Circuit: <u>Gibo v. U.S. Bank Nat'l Ass'n</u>, Civ. No. 12-00514 SOM-RLP; <u>Lima v. Deutsche Bank Nat'l Trust Co.</u>, Civ. No. 12-00509 SOM-RLP; and <u>Bald v. Wells Fargo Bank, N.A.</u>, Civ. No. 13-00135 SOM-KSC.  These cases all allege the same basic theories of recovery against mortgage servicers and their attorneys who participated in non-judicial foreclosure sales involving putative class plaintiffs who had mortgaged their properties.  Two other similar cases, <u>Ilar v. Routh Crabtree Olsen P.C.</u>, Civ. No. 13-00145 DKW-BMK, and

Degamo v. Bank of Am., N.A., Civ. No. 13-00141 DKW-BMK, have been stayed pending the appeals of Gibo, Lima, and Bald.

In light of the similar factual and legal issues raised in the above cases and the pending appeals, and the Court's finding that it has CAFA jurisdiction over this matter, the Court recommends that this action should be stayed pending disposition of the Gibo, Lima, and Bald appeals.  The stay shall apply to the entirety of this matter, including discovery.

If the stay is imposed, the Court also recommends that this case be administratively closed.  The case shall be administratively reopened by the Clerk of Court upon issuance of the Ninth Circuit's mandates regarding the pending appeals or upon further order of this Court, which may be issued *sua sponte* or upon a party's motion.  The parties shall notify the Court within ten (10) days following the disposition of any of the pending appeals.  The administrative closing of this case is solely an administrative matter and does not impact, in any manner, any party's rights or obligations, has no impact on any limitation period, does not alter in any manner any previous rulings by the Court, and does not require a filing fee to reopen the cases.

## CONCLUSION

In accordance with the foregoing, the Court FINDS and RECOMMENDS that (1) Plaintiff's Motion for an Order of Remand, filed on November 8, 2013, be DENIED; and (2) PNC's Motion to

Stay Pending Appeal of Related Cases or, in the Alternative, for an Extension of Time, filed on November 5, 2013, be GRANTED.

    IT IS SO FOUND AND RECOMMENDED.

    DATED: HONOLULU, HAWAII, FEBRUARY 27, 2014.



_____
Richard L. Puglisi
United States Magistrate Judge

FERGERSTROM V. PNC BANK, N.A., ET AL.; CIVIL NO. 13-00526 DKW-RLP; FINDINGS AND RECOMMENDATION TO (1) DENY PLAINTIFF'S MOTION FOR AN ORDER OF REMAND AND (2) GRANT PNC'S MOTION TO STAY PENDING APPEAL OF RELATED CASES