IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| WAYNE FERGERSTROM, SHENANDOAH KAIAMA, and WINDY KAIAMA, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>PNC BANK, N.A.,<br><br>        Defendant. | CIVIL NO. 13-00526 DKW-RLP<br><br>**ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND (2) DENYING PLAINTIFFS' MOTION TO CERTIFY CLASS** |

## INTRODUCTION

PNC seeks dismissal of the claims for wrongful foreclosure and violation of Hawaii Revised Statutes ("HRS") Chapter 480 brought by putative class representatives Shenandoah and Windy Kaiama, and Wayne Fergerstrom, arising from nonjudicial foreclosure sales conducted by PNC in 2009 and 2010. For their part, Fergerstrom and the Kaiamas move for certification of the proposed class, and three subclasses, of consumers who were subjected to notices of foreclosure sale under HRS § 667-5, prepared by the law firms of Routh Crabtree Olsen, P.S. or RCO Hawaiʻi LLLC (together, "RCO") on behalf of PNC.

Because Plaintiffs were required to assert their claims alleging defects in their particular foreclosure proceedings, and seeking to void the foreclosure sales, prior to the entry of new Transfer Certificates of Title by the Land Court, and did not do so, both Fergerstrom's and the Kaiamas' individual claims are barred. As a matter of Hawaiʻi law, the Land Court's entry of Certificates of Title is conclusive and unimpeachable evidence of the subsequent owners' title to the properties, and Plaintiffs' claims, which seek to impeach the foreclosure proceedings, and demand damages to compensate for the loss of title and possession, are statutorily precluded. *See Aames Funding Corp. v. Mores*, 107 Hawaiʻi 95, 101, 110 P.3d 1042, 1048 (2005) (citing HRS § 501-118). Accordingly, the Court GRANTS PNC's Motion for Summary Judgment. Further, because the prospective class representatives have no remaining claims, the Court DENIES Plaintiffs' Motion for Class Certification, as detailed below.

## BACKGROUND

I. **Factual Background**

    A.     **Fergerstrom Foreclosure**

On May 3, 2007, Fergerstrom executed a mortgage in favor of PNC's predecessor, National City Bank ("NCB"), as security for his performance under an unrecorded promissory note in the amount of $585,000 secured by real property at

1066 Kina St., Kailua, Hawaii 96734 ("Fergerstrom Property"). The Fergerstrom

mortgage was recorded as Land Court No. 3599690. Decl. of Dorothy J. Thomas

¶ 6, Dkt. No. 101-1; Ex. A. (Fergerstrom Mortgage), Dkt. No. 101-3. Fergerstrom

defaulted on his loan in February 2009, and PNC commenced nonjudicial

foreclosure proceedings under the power of sale provision contained in the

mortgage.

On August 3, 2009, PNC published a Notice of Mortgagee's Intention to

Foreclose Under the Power of Sale ("Notice of Sale") on the Fergerstrom Property.

Thomas Decl. ¶ 13; Ex. J (Aff. of Foreclosure). The Notice of Sale gave notice of a

foreclosure auction of the Fergerstrom Property that would take place on September

9, 2009. *Id.* At Fergerstrom's request, PNC postponed the September 9, 2009 sale

and attempted to resolve the loan delinquency through a forbearance agreement.

Thomas Decl. ¶ 14. Under the agreement, the lender agreed to forbear from

conducting a foreclosure sale during the term of the agreement until an event of

default. Ex. F (Forbearance Agreement); Dkt. No. 102-1. Although Fergerstrom

made some payments under the forbearance agreement, he failed to cure his default,

and, as a result, PNC proceeded with the foreclosure sale on April 12, 2010.[1]

Thomas Decl. ¶ 15. PNC was the successful bidder at the foreclosure auction with

_____

[1]Fergerstrom made no payments after April 2010. Thomas Decl. ¶ 9.

a credit bid of $639,637.97, the amount then owed by Fergerstrom under the Note

and Mortgage. *Id.*

PNC conveyed the Fergerstrom Property to the Federal National Mortgage

Corporation ("Fannie Mae"), the investor on the Fergerstrom Loan, by a quitclaim

deed recorded on May 13, 2010. Thomas Decl. ¶ 16, Ex. G (5/13/10 Quitclaim

Deed), Dkt. No. 102-3. On May 13, 2010, the Land Court entered Certificate of

Title No. 981,816, certifying that Fannie Mae was the fee-simple owner of the

Fergerstrom Property, transferring title from Certificate No. 757,612. Decl. of Reid

Davis, Ex. K (TCT No. 981,916), Dkt. No. 103-11. Fannie Mae thereafter

conveyed the Fergerstrom Property to the current, third-party owners by Limited

Warranty Deed, which was filed in the Land Court on December 3, 2010, as

Document 4026085 on Certificate of Title No. 981,816, and reflects the issuance of

a new Transfer Certificate of Title ("TCT") No. 1,005,710.[2] Ex. L (12/3/10

Warranty Deed), Dkt. No. 102-7. The new TCT No. 1,005,710 indicates that it was

issued and entered as of December 3, 2010, and also reflects that it was transferred

"from Certificate No. 981,816, registered 05/13/2010." Ex. M (TCT No.

1,005,710), Dkt. No. 102-8.

---

[2]The prior Certificate of Title No. 981,816 reflects that it was "CANCELLED BY DOCUMENT
4026085 ON 12/03/2010" and includes the notation "SEE NEW CT 1005710." Ex. K.

**B.**    <u>Kaiama Foreclosure</u>

On September 26, 2006, National City Mortgage, a division of NCB,

executed a mortgage loan to Shenandoah and Windy Kaiama in the amount of

$248,000 secured by property at 642 Mikia Place, Kaunakakai, Molokai, Hawaii

96748 ("Kaiama Property"). Ex. C (Kaiama Mortgage). PNC business records

reflect that the Kaiama loan became delinquent in June 2009 and was never brought

current. Thomas Decl. ¶ 10; Ex. E, Dkt. No. 101-7. PNC commenced foreclosure

proceedings pursuant to the power of sale provision contained in the mortgage, and

on October 27, 2009, PNC published a Notice of Sale. Ex. N (Aff. of Foreclosure),

Dkt. No. 102-9. The Notice of Sale identified the foreclosure sale auction date as

November 13, 2009 for the Kaiama Property and set forth the terms and conditions

of the sale. *Id.* PNC postponed the sale scheduled for November 13, 2009 until

November 30, 2009. Thomas Decl. ¶ 18.

At the November 30, 2009 foreclosure auction, PNC was the successful

bidder with a credit bid of $178,200, less than the $258,302.16 owed by the Kaiamas

on that date. Thomas Decl. ¶ 19; Ex. E. PNC conveyed the Kaiama Property to

itself by a quitclaim deed recorded on April 15, 2010 in the Land Court as Document

No. 3955690 on Certificate No. 779,406. Ex. O (4/15/10 Quitclaim Deed), Dkt.

No. 102-10. On April 15, 2010, the Land Court issued and entered Certificate of

Title No. 978,781, certifying that PNC was the fee-simple owner of the Kaiama Property. Ex. P (TCT No. 978,781), Dkt. No. 102-11. On September 2, 2011, PNC sold the Kaiama Property to a third-party purchaser for $90,000. Thomas Decl. ¶ 20. PNC conveyed title to the subsequent purchaser by Limited Warranty Deed filed in the Land Court on September 2, 2011, as Document No. 4095680, which notes the issuance of a new Certificate of Title No. 1,031,006. Ex. Q (9/2/11 Limited Warranty Deed), Dkt. No. 102-12. The new TCT No. 1,031,006 reflects that it was issued and entered as of September 2, 2011, and includes the notation "Transfer from #978781, registered 04/15/2010." Ex. R. (TCT No. 1,031,006), Dkt. No. 102-13.

## II. <u>Procedural Background</u>

### A. <u>Plaintiffs' Claims</u>

On September 16, 2013, Fergerstrom filed the original complaint, alleging wrongful foreclosure against PNC and requesting monetary damages.[3] On May 18, 2018, Fergerstrom and the Kaiamas filed their First Amended Complaint ("FAC"), asserting claims for wrongful foreclosure and violation of HRS Chapter 480, and

---

[3]On April 25, 2014, the case was stayed and administratively closed pending the resolution of three similar class actions appealed to the Ninth Circuit. Dkt. No. 59. The stay was lifted on June 22, 2017, following the resolution of those cases on appeal. Dkt. No. 70. On May 1, 2018, the Magistrate Judge granted Fergerstrom's Motion for Leave to File First Amended Complaint, Dkt. No. 88, which sought to add (1) two new plaintiffs; (2) additional subclasses based on new theories of liability; (3) new factual allegations; and (4) new categories of relief. *Id.* at 3.

seeking to void the foreclosure sales, restore title and possession,[4] and recover monetary damages. Plaintiffs' claims against PNC are predicated on certain defects contained in the Notice of Sale, and on PNC's alleged failure to properly publish the Notice of Sale. FAC ¶¶ 30–33, 39–42.

The FAC asserts claims on behalf of Plaintiffs and all others similarly situated under Federal Rule of Civil Procedure 23. Plaintiffs allege that PNC "breached its duties to act in good faith to sell the properties to the owners' best advantage and to use reasonable diligence to secure the best possible price, because [it] adopted foreclosure policies and practices designed and intended to deter public participation and 'chill' bid prices at non-judicial auctions."[5] FAC ¶ 6.

---

[4] Plaintiffs did not name as defendants the third-party purchasers and occupants of their respective properties who hold current title and/or possession. Additionally, despite the allegations throughout the FAC, Plaintiffs, in their opposition brief, represent that they do not seek return of title and possession for themselves, but rather included that demand "for absent class members." Mem. in Opp'n to MSJ at 6, Dkt. No. 117.

[5] The FAC asserts that the following "policies and practices … actively and intentionally 'chilled' competitive bidding"—

    a.    Recording and publishing Notices of Sale that did not include a "description of the mortgaged property" (a) as required by H.R.S. Section 667-7(a)(l) (2008) and (b) which was "sufficient to inform the public of the nature of the property to be offered for sale" and "calculated to interest purchasers," as required by *Ulrich v. Sec. Inv. Co.*, 35 Haw. 158, 172-73 (1939);

    b.    Publishing and/or posting the Notice of Sale for less time than required by statute;

Count I asserts a wrongful foreclosure claim based upon PNC's practice of advertising that the property would be sold only by quitclaim deed, FAC ¶ 45, but conveying the property in certain instances to third-party bidders by limited

---

c. Advertising the auctions of properties by "quitclaim deed" and/or without any covenants or warranties of title whatsoever when in fact buyers at auctions by Defendants would receive limited warranty deeds;

d. Postponing auctions frequently such that the majority of sale dates advertised in the Class's published notices of sale were not the actual auction dates;

e. Postponing auctions without publishing notices of the rescheduled auctions' new dates and times in a newspaper;

f. Changing the location of the auction without publishing the new location;

g. Including as a term of sale that time was of the essence and the successful bidders were expected to close their sales within thirty days of their auctions, when in fact such sales rarely if ever closed within the specified timeframe;

h. Including as a term of sale an unenforceable liquidated damage provision allowing Defendant PNC to retain a bidder's entire ten-percent deposit should the bidder be unable to close its sale within thirty days of the auction, which liquidated damages amount bore no reasonable relationship to Defendant's actual damages and thus constituted a penalty; and

i. Including as a term of sale a limitation that a bidder's sole remedy was the return of its bid in the event a sale did not close for any reason other than the bidder's own failure to perform, thus implying that a foreclosing mortgagee could render a sale "illusory" at the whim of the mortgagee.

FAC ¶ 6. Plaintiffs allege that this non-judicial foreclosure "system" created by PNC "negatively impacted all of the Class to a similar degree regardless of whether each Class member's own foreclosure exhibited some, most, or all of the policies and practices that contributed to the systemic 'chilling' of the non-judicial auction market." FAC ¶ 8. The FAC asserts that, because "the market as a whole was depressed, all of the Class was harmed by the 'chilled' bid prices that [PNC's] non-judicial foreclosure system caused." FAC ¶ 8.

warranty deed, FAC ¶ 46, contrary to a foreclosing mortgagee's duties under the power of sale and HRS §§ 667-5 and 667-7. FAC ¶ 48. Plaintiffs also allege that PNC violated publication notice and postponement requirements contained in the power of sale clauses in the mortgages and statutes. FAC ¶¶ 51–64. Plaintiffs assert that the foreclosure sales of the Fergerstrom Property, Kaiama Property, and "the sales of all properties of the Class members were void, or at the very least voidable" under the common law and by statute, and that "Plaintiffs and the Class are entitled to appropriate damages remedies as a result, including restitution and/or rescissory damages designed to restore the equivalent of the Properties to Plaintiffs and the Class." FAC ¶ 73.

Count II alleges both unfair and deceptive trade practices ("UDAP") and unfair methods of competition ("UMOC") claims under HRS § 480-2. Plaintiffs contend that PNC's conduct violated HRS § 480-2 in the following manner—

> (a) it violated a clear and established public policies [sic]: (1) against "chilling the bidding", (2) in favor of the "widest publicity," (3) that the provisions of H.R.S. §§ 667-5 et seq. and the terms and conditions of mortgage contracts were to be strictly followed by foreclosing mortgagees and that said mortgagees sell the property pledged in a manner calculated to give the best advantage to the owner of the property and use reasonable efforts to secure the "best possible price"; (2) [sic] it was immoral, unethical, oppressive, unscrupulous, and/or (3) it was substantially injurious to consumers, and constituted representations, omissions, or practices that were objectively material and misleading to the detriment of consumers such as

Plaintiff, and to other consumers, who were discouraged from bidding at public auctions based on the purported terms of sale therein.

FAC ¶ 82. PNC also allegedly violated HRS § 480-2 "by advertising … the Properties for sale without covenants or warranties as to title or encumbrances," because such "terms of sale were false, deceptive, and misleading, inasmuch as successful third party bidders almost always received limited warranty deeds, and not quitclaims as advertised in the Class's notices of sale." FAC ¶ 83. Further, Plaintiffs allege injury based upon "unfair and deceptive terms of sale," including advertising in the Notices of Sale that the successful bidders must close their sales within 30 days of the auctions, FAC ¶ 84, retaining the 10% down payment as liquidated damages for any delay in the purchaser's closing, FAC ¶ 85, and that if the foreclosing mortgagee should fail to convey title to a successful bidder for any reason "other than Purchaser's own failure to perform," the bidder would have "no further recourse" against the foreclosing mortgagee or its agents other than a return of its bid. FAC ¶ 86.

Plaintiffs seek treble damages under HRS § 480-13, FAC ¶ 84, because PNC "violated a clear and established public policy that the provisions of HRS §§ 667-5 *et seq*. and the terms and conditions of mortgage contracts were to be strictly followed by foreclosing mortgagees and that said mortgagees sell the property

pledged in a manner calculated to give the best advantage to the owner of the property and use reasonable efforts to secure the 'best possible price.'"  FAC ¶ 95. In addition to damages, Count II also seeks redress for "all such sales and sales contracts [that] are void under H.R.S. Section 480-12[,]" FAC ¶ 96, and "to receive all proceeds and profits that PNC made or received by virtue of its conduct, and to [sic] a declaration that each such sale was void."  FAC ¶ 98.

## B.  <u>Pending Motions</u>

On June 1, 2018, PNC filed a Motion to Dismiss, Dkt. No. 94, and on July 13, 2018, it filed a Motion for Summary Judgment, Dkt. No. 100, requesting similar relief.  As PNC's counsel noted at the August 28, 2018 hearing on the motions, the issues and grounds for relief raised in the Motion to Dismiss are largely subsumed within the later-filed Motion for Summary Judgment.[6]  The Court therefore

---

[6]PNC seeks summary judgment with respect to:

> 1. Plaintiffs' demands for: (a) a declaration voiding the foreclosure sales; (b) an order for the return of title and possession; (c) an award of "rescissory or equitable damages intended to be equivalent to restoration of title and possession," and (d) an award of "lost rental value," as alleged in the First Amended Complaint. (*See* Dkt. 91, at Prayer for Relief, Paras. 1, 9, 10.)  In other words, PNC requests a summary adjudication ruling limiting Plaintiffs' relief to lost net equity, if any; and

addresses the issues and evidentiary record presented by the parties in the briefing on the summary judgment motion, and, unless otherwise noted, does not separately address PNC's Motion to Dismiss.

On July 13, 2018, Plaintiffs filed a Motion for Class Certification, for Approval of Class Notice and Dissemination Plan. Dkt. No. 103. The motion to certify requests an order granting certification to the following proposed class:

> All consumers within the meaning of H.R.S. Chapter 480 who owned real property in Hawaiʻi land who were subjected to a notice of foreclosure sale under H.R.S. § 667-5 prepared by Derek Wong or the law firm of Routh Crabtree & Olson by or on behalf of Defendant PNC (or NCB before its merger with PNC) claiming for PNC or NCB the rights of a mortgagee with a power of sale and as to whose property Defendant PNC or NCB thereby caused the sale or transfer of the property on or after September 9, 2009.

Mot. for Class Cert. at 1, Dkt. No. 103. The proposed class further includes subclasses "A," "B," and "C."[7] PNC opposes class treatment, for among other

---

2 Plaintiffs' claims for wrongful foreclosure and violation of Hawaii's UDAP statute (HRS § 480-2) premised on the alleged non-*Hungate* violations set forth in the First Amended Complaint.

MSJ at 2, Dkt. No. 100.

[7]Subclass "A" consists of:

> all members of the Class whose non-judicial auction sale was not held on both the date and location specified in the original published notice (i.e., either or both the date and/or location were changed), without one or more of the following conditions being satisfied (a) publication of the notice of the changed date or

reasons, that Plaintiffs are not typical or adequate class representatives because they are subject to the unique defenses raised in PNC's Motion for Summary Judgment, namely, that their claims are time-barred under statutory provisions applicable to Land Court registered properties.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a "party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."   A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   *Id.*

"Rule 23 and its sub-rules are flexible and do not preclude summary judgment prior to class certification."   *Villa v. San Francisco Forty-Niners, Ltd.,* 104 F. Supp. 3d 1017, 1020 (N.D. Cal. 2015) (quoting *Wright v. Schock*, 742 F.2d 541, 543 (9th Cir. 1984) (explaining that the rules deliberately avoid a mechanical approach)). "This is especially true if the judgment will not be res judicata as to other individual

---

location in three successive weeks; (b) publication of a notice stating the new date and time for the sale at least 29 days after the first publication of such notice.

Mot. for Class Cert. at 1.   Subclass "B" consists of "all members of the Class whose Notice of Sale was published or posted for less time before the proposed auction date than required for such publishing or posting by HRS Chapter 667, Part I."   Mot. for Class Cert. at 2.   Subclass "C" consists of "all members of the class whose Notice of Sale contained no 'description' of the property within the meaning of HRS Section 667-7(a)(l ) or only a 'metes and bounds' or square footage description of the land."   *Id.*

plaintiffs or other members of any class that may be certified." *Khasin v. Hershey Co.*, No. 5:12-CV-01862-EJD, 2014 WL 1779805, at *2 (N.D. Cal. May 5, 2014) (citing *Wright*, 742 F.2d at 544).

## DISCUSSION

Plaintiffs' claims for wrongful foreclosure and violation of HRS § 480-2, which seek to impeach the prior foreclosures and void the resulting sales, are precluded under HRS § 501-118 in light of Plaintiffs' failure to assert them prior to the Land Court's entry of new TCTs. PNC's Motion for Summary Judgment is therefore granted. Because the Court dismisses in full the class representatives' individual claims, their motion for class certification is denied.

## I. Plaintiffs' Individual Claims Are Barred

Before turning to the merits of PNC's Motion, the Court first examines the unique structure and requirements of the Land Court registration system. As detailed below, Plaintiffs' claims seeking to void their respective foreclosure sales constitute impermissible actions to impeach the prior foreclosure proceedings, and they are therefore barred by HRS § 501-118.

A.     **Legal Framework**

1.     **Hawaii's Land Court Recording System**

In the State of Hawaii, there are two land recording systems for registering

title to real property: the Bureau of Conveyances ("BOC") and the Land Court.   *See*

*Wells Fargo Bank, N.A. v. Omiya*, 142 Hawaiʻi 439, 446, 420 P.3d 370, 377 (2018)

(citing *GGS (HI), Inc. v. N.Y. Diamond, Inc. (In re 2003 Ala Wai Blvd.)*, 85 Hawaiʻi

398, 405, 944 P.2d 1341, 1348 (App. 1997), *overruled on other grounds*, *Knauer v.*

*Foote*, 101 Hawaiʻi 81, 63 P.3d 389 (2003)).   "Hawaii Land Court is a court of

limited jurisdiction created for the special purpose of carrying into effect the Torrens

title system of land registration."   *Tilley v. Bank of New York Mellon*, No. CV

17-00524 HG-RLP, 2018 WL 1415171, at *5 (D. Haw. Mar. 21, 2018) (citation

omitted).   The Hawaii Supreme Court recently described the history of the Land

Court and its Torrens system in the following manner—

> The legislature created the Land Court with the passage of the
> Torrens Land Act (Act) in 1903, which is today codified in HRS
> Chapter 501 as amended.   1903 Haw. Sess. Laws Act 56, § 2 at
> 279.   The purpose of the system created by the Act "is to
> conclusively establish title to land through the issuance of a
> certificate of title."   *Aames Funding Corp. v. Mores*, 107
> Hawaiʻi 95, 101, 110 P.3d 1042, 1048 (2005).   The holder of a
> certificate of title holds it "free from all encumbrances except
> those noted on the certificate in the order of priority of
> recordation" and other statutorily enumerated encumbrances.
> HRS § 501-82(a) (Supp. 2016).   Thus, "a land court certificate
> of title is 'conclusive and unimpeachable' with regard to 'all

matters contained therein,'" which is "[t]he fundamental difference between a certificate of title issued by the land court and a recordation of title at the bureau of conveyances." *In re 2003 Ala Wai Blvd*., 85 Hawaiʻi at 405, 944 P.2d at 1348.

*Omiya*, 142 Hawaiʻi 439, 446–47, 420 P.3d 370, 377–78 (2018).

"The Transfer Certificate of Title is a single document that lists each current registered owner of the property and every encumbrance or other interest that binds the property.   This enables anyone who is interested to easily ascertain who has an ownership or other interest in a parcel of Land Court property."   *Tilley*, No. CV 17-00524 HG-RLP, 2018 WL 1415171, at *5 (citation omitted).[8]   Owners of Land Court registered property "may convey, mortgage, lease, charge, or otherwise deal with the same as fully as if it had not been registered."   HRS § 501-101 (2006).   In *Omiya*, the Hawaii Supreme Court explained the statutory and regulatory framework

---

[8]Following the Land Court's initial decision to grant an application to register property in Land Court, the Land Court issues a decree.   HRS § 501-71(a)-(b).   A copy of that decree is then sent to the assistant registrar who "transcribe[s] the decree" in the registration book "in which a leaf or leaves in consecutive order shall be devoted exclusively to each title."   HRS § 501-75.   "The entry made by the assistant registrar in this book in each case shall be the original certificate of title," *id*., and the certificate "take[s] effect from the date of the transcription[.]"   HRS § 501-83. "Thus, the act of transcribing the decree into the registration book results in creation of the original certificate of title, which is retained in the registration book with all other certificates.   *Omiya*, 142 Hawaiʻi at 450, 420 P.3d at 381.   "The original certificate in the registration book is entitled 'original certificate of title, entered pursuant to decree of the land court, dated at,' followed by the 'time and place of entry of decree and the number of the case.'"   *Id.* (quoting HRS § 501-83). Decrees of registration and the entry of certificates are agreements running with the land and are binding upon the applicant and his or her successors, and the property "shall be and forever remain registered land," HRS § 501-86, unless deregistered by the owner of record.   *See* HRS § 501-261.5.

for the registration of new certificates of title upon conveyance of Land Court

property—

> An owner desiring to convey in fee registered land, or any
> portion thereof, executes a deed of conveyance, which is then
> presented to the assistant registrar.  HRS § 501-108(a).  If the
> instrument contains the requisite information, then the assistant
> registrar records it.    RLC Rule 58; HRS § 501-108(a).
> Following recording and in accordance with prescribed
> procedures involving a review and certifying process, the
> assistant registrar "make[s] out in the registration book a new
> certificate of title to the grantee," and the original certificate of
> title is stamped "canceled."  HRS § 501-108(a)(1); *see* RLC
> Rule 59 ("The assistant registrar shall thereupon, in accordance
> with the rules and instructions of the court, enter a new
> certificate in the name of the grantee.").  The assistant registrar
> also lists any encumbrances or claims adverse to the title of the
> owner on the new certificate of title, unless they can be
> simultaneously released or discharged.  HRS § 501-110.

> Thus, provisions of HRS Chapter 501 provide the original and
> new certificates of title as being within the registration
> book—the decree is "transcribe[d] in the [registration] book,"
> which "shall be the original certificate of title," and new
> certificates of title are "ma[d]e out in the registration book."
> HRS §§ 501-75, 501-108(a); *see* HRS § 501-196 (2006)
> (disallowing, with some exceptions, erasures, alterations, or
> amendments "upon the registration book after the entry of a
> certificate of title ... thereon").  Original certificates of title are
> therefore created when they are transcribed in the registration
> book and do not exist prior to this transcription, and similarly,
> new certificates of title are created when they are made out in the
> registration book.

*Omiya*, 142 Hawaiʻi at 450–51, 420 P.3d at 381–82 (footnote omitted).  The "new

certificate ... shall be binding upon the registered owner and upon all persons

claiming under the registered owner, in favor of every purchaser for value and in good faith." HRS § 501-106(b). "Transfer Certificates of Title are generally unimpeachable because the Hawaii Land Court registration system is designed to preserve the integrity of titles." *Tilley*, No. CV 17-00524 HG-RLP, 2018 WL 1415171, at *6 (citing *Waikiki Malia Hotel, Inc. v. Kinkai Properties Ltd. P'ship*, 75 Haw. 370, 862 P.2d 1048, 1060 (Haw. 1993)). Thus, TCTs are conclusive evidence of title and generally may not be challenged after entry.[9]

### 2. Registration of Title in Land Court Generally Bars Claims for Wrongful Foreclosure Initiated After the Entry of a TCT

Under HRS § 501-118, which governs foreclosure of Land Court registered property, no claim impeaching any foreclosure proceeding may be initiated after the entry of a new certificate of title. The statute states—

> Mortgages of registered land may be foreclosed like mortgages of unregistered land.

> In case of foreclosure by action, a certified copy of the final judgment of the court confirming the sale may be filed or recorded with the assistant registrar or the deputy after the time for appealing therefrom has expired and the purchaser shall thereupon be entitled to the entry of a new certificate.

> In case of foreclosure by exercising the power of sale without a previous judgment, the affidavit required by chapter 667 shall be

---

[9]"Although the terms do not appear in HRS Chapter 501, the Rules of the Land Court refer in some instances to a new certificate of title as a 'transfer certificate of title' or TCT." *Omiya*, 142 Hawai'i at 444 n.4, 420 P.3d at 375 n.4.

recorded with the assistant registrar. The purchaser or the purchaser's assigns at the foreclosure sale may thereupon at any time present the deed under the power of sale to the assistant registrar for recording and obtain a new certificate. Nothing in this chapter shall be construed to prevent the mortgagor or other person in interest from directly impeaching by action or otherwise, any foreclosure proceedings affecting registered land, prior to the entry of a new certificate of title.

After a new certificate of title has been entered, no judgment recovered on the mortgage note for any balance due thereon shall operate to open the foreclosure or affect the title to registered land.

HRS § 501-118.

Applying HRS § 501-118, the Hawaii Supreme Court in *Aames Funding Corp. v. Mores*, 107 Hawai'i 95, 110 P.3d 1042 (2005), determined that conclusive effect is to be given to newly entered Transfer Certificates of Title on the question of title to registered land. The Hawaii Supreme Court ruled that a mortgagor's right to impeach a foreclosure proceeding is generally limited to the period of time before entry of a new certificate of title. Under *Aames*, "defenses to mortgages foreclosed upon by exercise of the mortgagee's power of sale must be raised 'prior to the entry of a new certificate of title.'" 107 Hawai'i at 102, 110 P.3d at 1049 (quoting HRS § 501-118). The Hawaii Supreme Court explained that once the Land Court enters a TCT, the title to the subject property becomes "conclusive and unimpeachable."

107 Hawaiʻi at 103, 110 P.3d at 1050.    *Aames* provides a narrow exception to allow

for an untimely challenge to a "conclusive and unimpeachable title" when:

> (1) there was fraud to which the purchaser was a party; and,

> (2) there has been no subsequent bona fide purchaser.

*Tilley*, No. CV 17-00524 HG-RLP, 2018 WL 1415171, at \*7 (citing *Aames*, 110

P.3d at 1050).

The Hawaii Supreme Court recently affirmed the *Aames* rule in *Wells Fargo*

*Bank, N.A. v. Omiya*, restated as follows—

> Under Hawaiʻi law, in the case of non-judicial foreclosure of real
> property registered with the Land Court, the mortgagor or other
> person in interest may directly impeach the foreclosure
> proceedings affecting the property prior to the entry of a new
> certificate of title.   However, after a new certificate of title has
> been entered, no judgment recovered on the mortgage note for
> any balance due shall operate to open the foreclosure or affect
> the title to the registered property (with some exceptions for
> fraud).

*Omiya*, 142 Hawaiʻi at 442, 420 P.3d at 373.   *Omiya* mandates that it is the entry of

the TCT by the Land Court, rather than the issuance of a certificate number, which

precludes impeachment of the foreclosure proceeding.   *See Omiya*, 142 Hawaiʻi at

453, 420 P.3d at 384 (explaining that "despite various statutory changes made to

HRS Chapter 501 since its enactment, HRS § 501-118 has remained virtually

identical, evincing the legislature's intent to maintain the entry of a new certificate

as the pivotal juncture after which foreclosure proceedings may no longer be impeached").

Two decisions from this district court have applied the holding in *Aames* to bar claims asserting that the foreclosing mortgagee did not strictly comply with the requirements of the nonjudicial foreclosure statute and the power of sale provision in the mortgage where the suits were initiated after the entry of new certificates of title. In *Tilley*, the district court granted the bona fide purchaser's motion for judgment on the pleadings, ruling that the plaintiff's "challenges to title of the Subject Property are untimely as to the Intervening Defendant, absent a demonstration of fraud to which the Intervening Defendant was a party," because the Land Court registered the TCT to the foreclosing mortgagee on June 9, 2011, but the "Plaintiff did not file her Complaint until February 17, 2017, nearly six years after the Hawaii Land Court issued the Transfer Certificate of Title to BONY." *Tilley*, CV 17-00524 HG-RLP, 2018 WL 1415171, at *7. The district court in *Tilley* concluded that there was "no fiduciary or confidential relationship between Plaintiff and the Intervening Defendant that would support a claim for constructive fraud," *id*. at *9, nor was there a fiduciary relationship between Plaintiff and the mortgagee for purposes of constructive fraud. *Id.*; *see also id.* at *9 ("The requirement that a mortgagee act in good faith does not establish a 'fiduciary or confidential relationship' for purposes

of constructive fraud. . . . A mortgagor and a mortgagee are not in a relationship akin to an attorney-client or a broker-client relationship. Nor do they have a confidential relationship. Rather, a mortgagor and mortgagee are in a contractual relationship that is not fiduciary in nature.") (citation omitted).

*Tilley* also rejected the plaintiff's argument that "she is allowed to challenge the Transfer Certificate of Title on the basis that the foreclosure sale to Defendant BONY is void." *Id.* at *11. Interpreting recent Hawaii case law, including *Kondaur Capital Corp. v. Matsuyoshi*, 361 P.3d 454, 467 (Haw. 2015), *Santiago v. Tanaka*, 366 P.3d 612, 633 (Haw. 2016), *Mount v. Apao*, 384 P.3d 1268, 1270 (Haw. 2016), and the bankruptcy court's decision in *In re Ho*, 564 B.R. 49, 55 (Bankr. Haw. 2017), the district court in *Tilley* concluded that an improperly conducted foreclosure sale under Hawaii law is voidable, not void. *Tilley*, 2018 WL 1415171, at *12. As a result, it ruled that "Plaintiff is unable to challenge the Intervening Defendant's title on the basis that the foreclosure sale conducted by the Defendant BONY is void." *Id.*

Another district court opinion, *Seegers v. CIT Bank N.A.*, No. CV 17-00399 LEK-KSC, 2018 WL 1558550 (D. Haw. Feb. 28, 2018), likewise adopted the *Aames* rule to bar a wrongful foreclosure claim initiated after the entry of a new certificate of title. In *Seegers*, the plaintiff asserted claims for quiet title and wrongful

22

foreclosure, and contended that "the Complaint sidesteps *Aames* by not naming the Property's current owners as defendants and by including in its prayer demands for money damages." *Seegers*, 2018 WL 1558550, at *2. The district court determined that the plaintiff alleged "defects in the foreclosure proceedings, which are defenses to foreclosure, and are governed by the *Aames* rule." *Id.* at *4. *Seegers* noted that, in *Aames*, the Hawaii Supreme Court interpreted HRS § 501-118 "to mean that a mortgagor's right to 'impeach[ ] any foreclosure proceeding' is expressly limited to the period before entry of a new certificate of title." *Id.* (quoting *Aames*, 107 Hawai'i at 101, 110 P.3d at 1048) (quoting HRS § 501-118)). The district court resolved that the plaintiff's "demand for title and possession is directly foreclosed by *Aames*," and, moreover, that any "claimed entitlement to money damages for loss of title and possession impeaches the foreclosure proceeding and contradicts the Land Court's issuance of new certificates of title." *Id.* at *4. *Seegers* reasoned that the plaintiff was not entitled to monetary damages commensurate with the loss of title and possession—

> Plaintiff would be entitled to relief for his loss of title and possession from April 20, 2011 until November 18, 2011 only if he was legally entitled to title and possession of the Property during that period. But the Land Court's TCT No. 1,020,789 is "conclusive and unimpeachable" evidence of Fannie Mae's title during that period. Similarly, Plaintiff's claim to entitlement to relief for loss of title and possession after November 18, 2011 impeaches TCT No. 1,034,750, which is "conclusive and

unimpeachable" evidence of the Current Owner's title. In short, Plaintiff's claim is that the completion of the foreclosure proceeding, alone, is an injury entitling him to relief. This claim is untimely because it was not brought prior to entry of the new certificate of title.

*Id.* at *4 (citations omitted). The district court determined that its "conclusion is consistent with the legislative intent behind the enactment of the Land Court system." *Id.* at *5 (footnote omitted). *Seegers* explained that the "legislative intent would be thwarted if the conclusive and unimpeachable character of certificates of title could be easily 'sidestepped' by suing the seller of registered land for money damages as a substitute for suing the current owner of registered land for title and possession." *Id.* at *5.

*Seegers* found unavailing the plaintiff's arguments that "the exception for constructive fraud applies because Defendants violated their fiduciary duty," because there was no "general fiduciary duty" owed to the plaintiff under the circumstances alleged. *Id.* at *6. Finally, the *Seegers* court rejected plaintiff's contention that "Defendants' alleged violations of Chapter 667 (2010) renders the Quitclaim Deed absolutely void, and that he may therefore bring his Complaint against Defendants regardless of the Land Court's issuance of a new certificate of title." *Id.* at *7. *Seegers* dismissed plaintiff's causes of action, ruling that because plaintiff "fails to show that any exception to the *Aames* rule applies, his defenses to

foreclosure nearly six years after the Land Court issued a new certificate of title cannot be considered." *Id.* at *7.

The Court next considers the application of *Aames* and HRS § 501-118 to the claims asserted in Plaintiffs' FAC.

### B. Plaintiffs' Claims Are Barred Under *Aames*

Hawaii law is clear that "after a new certificate of title has been entered, no judgment recovered on the mortgage note for any balance due shall operate to open the foreclosure or affect the title to the registered property (with some exceptions for fraud)." *Omiya*, 142 Hawaiʻi at 442, 420 P.3d at 373. On summary judgment, PNC presents the TCTs entered following the Fergerstrom and Kaiama foreclosure sales as conclusive and unimpeachable evidence of title to the Land Court registered properties. Fergerstrom TCT No. 981,816 was entered on May 13, 2010, vesting title in Fannie Mae, Ex. K, and when the Fergerstrom Property was sold to the current owners, the new TCT No. 1,005,710 was entered on December 3, 2010. Ex. M.[10] On April 15, 2010, the Land Court entered TCT No. 978,781 affecting the Kaiama Property. Ex. P. After PNC sold the Kaiama Property, the Land Court entered TCT No. 1,031,006 on September 2, 2011, reflecting the change in title.

---

[10]The new Fergerstrom TCT No. 1,005,710 indicates that it was transferred "from Certificate No. 981,816, registered 05/13/2010." Ex. M.

Ex. R.[11]   Fergerstrom filed this action on September 9, 2013, and the Kaiamas

joined as Plaintiffs upon the filing of the FAC on May 18, 2018.   Because Plaintiffs

filed their respective claims after the entry of new certificates of title, and because no

exception applies, their claims are barred by HRS § 501-118, as applied by *Aames*.

Under applicable case law, Plaintiffs' claims, which seek to void their

respective foreclosures and restore title and possession or, alternatively, to plead

around *Aames* by requesting equitable damages equivalent to restoring title, are

precluded because they seek to impeach the foreclosure proceedings.   The titles

issued pursuant to the foreclosure auctions, and thereafter to the subsequent

purchasers, are "conclusive and unimpeachable" in light of the entry of the new

TCTs.   Based upon the entire summary judgment record, the Court concludes that

the *Aames* rule—as interpreted by the district court in *Tilley*, which applied HRS

§ 501-118 to wrongful foreclosure claims seeking the return of possession, and in

*Seegers*, which expressly covered claims for monetary damages—bars Plaintiffs'

wrongful foreclosure and HRS § 480-2 claims.   Plaintiffs' arguments to the

contrary are unpersuasive.

First, Plaintiffs challenge the sufficiency of the TCTs in light of the Hawaii

Supreme Court's decision in *Omiya*.   *Omiya* held that "assignment of a new

---

[11]The subsequent Kaiama TCT includes the notation: "Transfer from #978781, registered 04/15/2010."   Ex. R.

certificate of title number is not the statutory equivalent of an entry of a certificate of title." Because the evidence in *Omiya* consisted only of "a deed [that was] accepted by the Office of the Assistant Registrar of the Land Court and stamped with a new certificate of title number," it was insufficient to trigger the preclusive effect contemplated by *Aames*. *Omiya*, 142 Hawaiʻi at 442–43, 420 P.3d at 373–74.[12]

The summary judgment record here is far more robust than what was present in *Omiya*. Here, the record includes the actual certified Land Court TCTs for the Fergerstrom and Kaiama Properties, Exs. K, M, P, and R, signed by the Assistant Registrar, which indicate the date of registration or cancellation of the prior certificate of title, as well as the owner's name, a description of the property, and a summary of encumbrances, as required by statute and rule.[13] The TCTs were issued and entered as of the date indicated on the face of each certified copy

_____

[12]*Omiya* emphasized the significance of this evidentiary distinction in the Land Court context and in light of HRS § 501-118—

> [W]hen statutory provisions in HRS Chapter 501 refer to a certificate of title, that is precisely what is meant; when provisions in HRS Chapter 501 reference the number of the certificate of title, that is also what is meant. If the legislature intended for the issuance of the number of the certificate of title to be the determinative point for when parties could no longer impeach foreclosure proceedings, the legislature would have so provided.

*Omiya*, 142 Hawaiʻi at 451, 420 P.3d at 382.
[13]The Hawaii Supreme Court explained that "a new certificate of title has information referencing the original registration, the owner's name, a description of the property, and a summary of encumbrances." *Omiya*, 142 Hawaiʻi at 450–51, 420 P.3d at 381–82.

presented—that is, they do not reflect the mere issuance of the number of the certificate of title.   Unlike in *Omiya*, there is no question in the present matter that the new certificates of title, in the requisite form, were issued, entered, and certified by the Assistant Registrar.   The TCTs, accordingly, are conclusive and unimpeachable evidence of title now held by the subsequent purchasers.   *Cf. Omiya*, 142 Hawaiʻi at 451 n.23, 420 P.3d at 382 n.23 ("The transfer is not made unimpeachable under HRS § 501-118, however, until a new certificate of title is issued.").

Second, Plaintiffs argue that *Aames* cannot serve as a bar to their tort claims in light of HRS § 501-212, which provides, in part, that "[n]othing in this chapter shall be construed to deprive the plaintiff of any tort claim which the plaintiff may have against any person for loss or damage, or deprivation of land, or of any estate or interest therein."[14]   This argument fails for at least two reasons.   First, the quoted

---

[14]The entire statute states—

> Any person who, without negligence on the person's part, sustains loss or damage, or is deprived of land or of any estate or interest therein, after the original registration of land under this chapter, by the registration of any other person as owner of such land, or of any estate or interest therein, through fraud, or in consequence of any error, omission, mistake, or misdescription in any certificate of title or in any entry of memorandum in the registration book, may prosecute a contract claim in the circuit court for the recovery of compensation for such loss or damage or for such land or estate, or interest therein; provided that when the person deprived of land or of any estate, or interest therein, in the manner above stated, has a remedy for the recovery of the land or of the estate, or interest therein, the person

portion of HRS § 501-212, on its face, does not touch HRS § 501-118, which

provides that "[n]othing in this chapter shall be construed to prevent the mortgagor

or other person in interest from directly impeaching by action or otherwise, any

foreclosure proceedings affecting registered land, prior to the entry of a new

certificate of title."   Whereas the former provision preserves pre-existing tort

claims, the latter provision does not deprive a plaintiff of any tort claim—it simply

reinforces the conclusive and impeachable nature of Land Court certificates of title

after entry.   Second, the statute cited by Plaintiffs creates a cause of action relating

to the registering of title in Land Court and is *not* triggered by Plaintiffs' earlier

foreclosure: "HRS § 501-212 provides a statutory remedy to any person who,

without negligence on the person's part, sustains loss as a result of the registration of

any other person as owner of such land through fraud, 'or in consequence of any

error, omission, mistake, or misdescription in any certificate of title ... in the

registration book.'   The claim may be brought as a contract claim 'for the recovery

of compensation for such loss or damage or for such land or estate, or interest

shall exhaust this remedy before resorting to the contract claim herein provided.
Nothing in this chapter shall be construed to deprive the plaintiff of any tort claim
which the plaintiff may have against any person for loss or damage, or deprivation
of land, or of any estate or interest therein.   If the plaintiff elects to pursue the
plaintiff's tort claim and also the plaintiff's contract claim under this chapter, the
contract claim shall be continued to await the result of the tort claim or shall be
deemed alternative thereto.

HRS § 501-212.

therein." *Omiya*, 142 Hawaiʻi at 448–49, 420 P.3d at 379–80 (quoting HRS

§ 501-212); *see also id.* at n.17 ("When the person who has been deprived of land or

of any estate, or interest therein, from conduct described in HRS § 501-212, has a

remedy to recover the land or interest, the person shall exhaust this remedy before

resorting to the statutory contract claim."). Both the plain language of HRS

§ 501-212 and common sense, work against Plaintiffs' reading of the statute.

The Court also rejects Plaintiffs' acknowledged attempt to side-step *Aames* by

seeking monetary damages in lieu of a return of title and possession.[15] The relevant

statute provides that "after a new certificate of title has been entered, no judgment

recovered on the mortgage note for any balance due shall operate to open the

_____

[15]In their prayer for relief, Plaintiffs, on behalf of themselves and those similarly situated, ask the
Court—

> (9)    For declaratory relief declaring (a) the publication of Notices of
> Foreclosure Under Power of Sale with offers of quitclaim deeds or their equivalents
> and without required property descriptions or required notices of acceleration,
> (b) the failure to properly publish new notices of sales that had not been held on
> their noticed date, and (c) the sales of the Properties of Plaintiffs and the members
> of the Class, all to be violations of PNC's legal duties, without legal effect and void
> under both the common law and H.R.S. Section 480-12;

> (10)    Ordering the return of title and possession of any properties of the members
> of the Class still held in the name of Defendant PNC or its agents and allowing
> Class members who wish to recover their wrongfully foreclosed property from any
> new purchaser to elect to do so if not barred by any limitations period instead of
> receiving that portion of their share of any Class award that is intended to
> compensate for return of title and possession[.]

FAC at 42.

foreclosure or affect the title to the registered property." Under HRS § 501-118, "a

mortgagor's right to directly impeach a foreclosure proceeding is 'expressly limited

to the period before entry of a new certificate of title.'" *Omiya*, 142 Hawai'i at 449,

420 P.3d at 380 (quoting *Aames*, 107 Hawai'i at 101, 110 P.3d at 1048). Thus, the

Land Court's entry of a new TCT cuts off the ability to impeach the prior foreclosure

proceeding, and because Plaintiffs' wrongful foreclosure and UDAP/UMOC claims

demonstrably attempt to do just that, they are barred regardless of how the *remedy* is

styled. That is, because the action attacks (*i.e.*, impeaches) the foreclosure

proceeding, the particular form of remedy—whether equitable damages or monetary

damages for lost market value, lost rent, lost use, lost equity, compensatory

damages, or some other measure—does not remove these *claims impeaching title*

from the proscription imposed by HRS § 501-118 and *Aames*. Indeed, as the

district court appropriately recognized in *Seegers*, the Land Court's purpose would

"be thwarted if the conclusive and unimpeachable character of certificates of title

could be easily 'sidestepped' by suing the seller of registered land for money

damages as a substitute for suing the current owner of registered land for title and

possession." *Seegers*, 2018 WL 1558550, at *5.

Further, the Court sees no principled distinction between equitable damages and the monetary damages for lost equity carved out in *Seegers*[16]—it is the action itself that impeaches the prior foreclosure proceeding, not the measure or type of damages sought. "For the parties to a land transaction to benefit by avoiding the expense and inconvenience of gathering records as evidence of title, both parties to the transaction must be protected by the conclusive and unimpeachable character of a Land Court certificate of title." *Seegers*, 2018 WL 1558550, at *5. Consequently, all relief sought for claims that impeach the foreclosure proceedings is barred by *Aames.*

Nor is there any exception for constructive fraud under the circumstances alleged. As explained only earlier this year in *Tilley* and *Seegers*, a foreclosing mortgagee does not engage in constructive fraud or breach a fiduciary duty owed to a mortgagor based on these types of allegations. *See Tilley*, 2018 WL 1415171, at *9 ("[A] fiduciary is required to act in the best interest of another while a mortgagee in a nonjudicial foreclosure situation must only deal fairly and justly and with due

---

[16]In *Seegers*, the district court purportedly relied on its prior decision in *Sigwart v. U.S. Bank Nat'l Ass'n*, Civil No. 13-00529 LEK-RLP, 2014 WL 1322813 (D. Haw. Mar. 31, 2014), in reaching its conclusion that "a claim for loss of equity is not barred under the *Aames* rule where it 'does not challenge Defendants' right to foreclose (or attempt to void the sale).'" *Seegers*, 2018 WL 1558550, at *3 (quoting *Sigwart*, at *7 n.6). In *Sigwart*, however, the district court was not faced with that issue because the *Sigwart* property was not a Land Court registered property, and therefore, was not subject to the *Aames* bar. *See Sigwart*, No. CV 13-00529 LEK-RLP, Dkt. No. 1, Compl. ¶ 11 (Mortgage recorded in BOC); ¶ 51 (Aff. of Foreclosure filed in BOC); ¶ 62 (Quitclaim deed recorded in BOC).

care. The requirement that a mortgagee act in good faith does not establish a 'fiduciary or confidential relationship' for purposes of constructive fraud."); *Seegers*, 2018 WL 1558550 at *6–7 (*Aames* fraud exception does not apply where mortgagee did not breach a fiduciary or confidential relationship) (citing *Lowther v. U.S. Bank N.A.*, No. 13-00235 LEK-BMK, 2014 WL 2452598, at *6 (D. Haw. May 30, 2014) ("This district court ... has repeatedly rejected" the argument that there is "a general fiduciary duty that the mortgagee owes the mortgagor.")).

Finally, the Court agrees with the decisions from this district court and elsewhere determining that Plaintiffs may not successfully avoid the bar imposed by HRS § 501-118 and *Aames* by arguing that the foreclosure sales were "void" as opposed to merely "voidable."[17] Thus, the Court rejects Plaintiffs' assertion that, because the sale to PNC was void, "it cannot hide behind the claim that the sale is closed and can no longer be impeached." Mem. in Opp'n to MSJ, at 20.

---

[17] *See, e.g.*, *Tilley*, 2018 WL 1415171 at *10-11 (discussing cases and concluding that unlawful foreclosure results in title that is voidable and not void); *Kondaur Capital Corp. v. Matsuyoshi*, 136 Hawai'i 227, 240, 361 P.3d 454, 467 (2015) (mortgagee's failure to properly conduct nonjudicial foreclosure renders the foreclosure "voidable"); *Santiago v. Tanaka*, 137 Hawai'i 137, 158, 366 P.3d 612, 633 (2016) (unlawful nonjudicial foreclosure is "voidable" and not void once the property has passed into the hands of a bona fide purchaser); *Mount v. Apao*, 139 Hawai'i 167, 169, 384 P.3d 1268, 1270 (2016) (following conveyance to bona fide purchaser, sale cannot be voided); *In re Ho*, 564 B.R. 49, 55 (Bankr. D. Haw. 2017) ("an improperly conducted foreclosure sale under Hawaii law is voidable, not void, and [] the Hawaii Supreme Court has impliedly overruled its earlier decisions to the contrary," including *Silva v. Lopez*, 5 Haw. 262, 272 (Haw. Kingdom 1884)).

In sum, PNC is entitled to summary judgment and Plaintiffs' individual claims impeaching their foreclosures are dismissed as barred by HRS § 501-118.[18]

## II.    <u>Plaintiffs' Motion for Class Certification Is Denied</u>

"Class certification is governed by Federal Rule of Civil Procedure 23." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).   Under Rule 23(a), the party seeking certification must first demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."   Fed. R. Civ. P. 23(a). "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)."   *Dukes*, 564 U.S. at 345.

Because the Court has dismissed the representative class members' individual claims, the motion for class certification must be denied.   *See Saeger v. Pac. Life Ins. Co.*, 305 F. App'x 492, 493 (9th Cir. 2008) (affirming grant of summary judgment and denial, as moot, of motion for class certification); *Dicuio v. Brother Int'l Corp.*, No. CIV.A. 11-1447 FLW T, 2015 WL 3403144, at *33 (D.N.J. May 27, 2015), *aff'd*, 653 F. App'x 109 (3d Cir. 2016) ("Having dismissed the claims of the

---

[18]Because the Court concludes that Plaintiffs' individual claims are barred, it does reach the remaining issues raised by PNC's Motion for Summary Judgment.

named Plaintiffs, these plaintiffs cannot stand as class representatives.   Hence, the motion for class certification is moot[.]").[19]

## CONCLUSION

For the foregoing reasons, the Court GRANTS PNC's Motion for Summary Judgment, Dkt. No. 100, and deems moot PNC's related Motion to Dismiss.   Dkt. No. 94.   The Court also DENIES Plaintiffs' Motion for Class Certification, for Approval of Class Notice and Dissemination Plan.   Dkt. No. 103.

IT IS SO ORDERED.

DATED: September 18, 2018 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

*Fergerstrom et al. v. PNC Bank, N.A.;* CV. NO. 13-00526 DKW-RLP; **ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND (2) DENYING PLAINTIFFS' MOTION TO CERTIFY CLASS**

---

[19]Whether characterized as moot, or alternatively based on the failure to satisfy the adequate representation requirement, it is clear that the entry of judgment against the proposed class representatives mandates the denial of the class certification motion.   *See* Fed. R. Civ. P. 23(a)(4) (requiring that class representatives be able to "fairly and adequately protect the interests of the class"); *see also Nw. Immigrant Rights Project v. United States Citizenship & Immigration Servs.*, 325 F.R.D. 671, 690 (W.D. Wash. 2016) (denying motion to certify subclass for lack of adequate representation because the court dismissed the individual claims of the plaintiff "who served as the only putative representative of the DACA Renewal Subclass").