IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| WAYNE FERGERSTROM, SHENANDOAH KAIAMA, WINDY KAIAMA, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>     vs.<br><br>PNC BANK, N.A.,<br><br>          Defendant. | Case No. 13-cv-00526-DKW-RLP<br><br>**ORDER (1) DENYING MOTION FOR RECONSIDERATION AND (2) DENYING IN PART AND DENYING AS MOOT IN PART MOTION TO STRIKE[1]** |

At summary judgment, Defendant argued, among other things, that the relief

Plaintiffs sought in this action was barred by the operation of Hawai'i law

requiring those who wish to impeach a foreclosure proceeding to do so before

entry of a new certificate of title for the subject property.   In support of this

argument, Defendant submitted four certificates of title for the subject properties in

this action, which, on their face, respectively stated: "Issued: 5/13/2010"; "Issued:

12/03/2010"; "Issued: 4/15/2010"; and "Issued: 09/02/2011[.]"

---

[1]As with the motion for reconsideration, *see* Dkt. No. 152, the Court elects to decide the motion to strike or, in the alternative, for leave to file a sur-reply without a hearing.   *See* LR 7.2(d).

In response, Plaintiffs argued, among other things, that Defendant had failed to establish when the certificates of title had been entered. In support of this argument, Plaintiffs provided no *evidence*. Instead, Plaintiffs asked this Court to take judicial notice of a statement made in a decision by the Supreme Court of Hawaiʻi. Faced with this evidentiary imbalance on summary judgment, the Court, perhaps predictably, found that the certificates of title provided by Defendant were "issued and entered as of the date indicated on the face of each certified copy…" and therefore precluded Plaintiffs' subsequent foreclosure impeachment efforts.

Four months after the Court ruled in favor of Defendant at summary judgment, and after Plaintiffs had appealed that ruling to the Ninth Circuit Court of Appeals, Plaintiffs filed the instant motion for reconsideration pursuant to Rules 60(b) and 62.1 of the Federal Rules of Civil Procedure. Plaintiffs argue that newly discovered evidence warrants reconsidering the Court's summary judgment ruling because, since then, the State of Hawaiʻi has begun "altering" certificates of title, including the ones at issue in this case, to reflect when they were entered. Because Plaintiffs' appeal is still pending, this Court lacks jurisdiction to grant their motion for reconsideration. However, the Court does have jurisdiction to deny the motion or indicate whether it raises a substantial issue. Exercising that jurisdiction, the Court DENIES the motion for reconsideration because Plaintiffs

have failed to show reasonable diligence for purposes of Rule 60(b).

## RELEVANT PROCEDURAL BACKGROUND

On October 10, 2013, Defendant PNC Bank, N.A. (PNC Bank or Defendant) removed Plaintiff Wayne Fergerstrom's (Fergerstrom) September 9, 2013 state court Complaint.   Dkt. Nos. 1, 1-1.   On May 18, 2018, Fergerstrom, as well as new plaintiffs Shenandoah and Windy Kaiama (Shenandoah Kaiama and Windy Kaiama, together, "the Kaiamas," and, collectively with Fergerstrom, "Plaintiffs"), filed an Amended Complaint against PNC Bank.   Dkt. No. 91.

On July 13, 2018, PNC Bank moved for summary judgment on various grounds, including the one mentioned above with respect to the certificates of title. Dkt. Nos. 100, 100-1.   On the same day, Plaintiffs filed a motion for class certification.   Dkt. No. 103.   On August 7, 2018, Plaintiffs opposed the motion for summary judgment on various grounds, including as described above with respect to the certificates of title.   Dkt. No. 117.   At the same time, PNC Bank opposed the motion for class certification.   Dkt. No. 115.

On September 18, 2018, after holding a hearing on the motions for summary judgment and class certification, Dkt. No. 135, this Court entered an Order granting the motion for summary judgment and denying the motion for class certification ("the September 18 Order"), Dkt. No. 140.   As mentioned above,

among other things, this Court found that the four certificates of title provided by PNC Bank (collectively, "the PNC certificates of title") were "issued and entered as of the date indicated on the face of each certified copy…[,]" thereby precluding Plaintiffs later challenge to the foreclosure proceedings relating to the subject properties. *Id*. at 27. Judgment was entered in favor of PNC Bank the next day. Dkt. No. 142.

On October 16, 2018, Plaintiffs filed a notice of appeal. Dkt. No. 144. The parties agree that the appeal is still pending before the Ninth Circuit Court of Appeals.

On January 22, 2019, Plaintiffs filed the instant motion for reconsideration of the September 18 Order. Dkt. No. 151. Plaintiffs assert that the motion is "based upon the discovery of new evidence." Specifically, Plaintiffs rely upon four certificates of title (collectively, "Plaintiffs' certificates of title") that they say were not available when they opposed summary judgment. On February 22, 2019, PNC Bank filed an opposition to the motion for reconsideration, to which Plaintiffs replied on March 7, 2019. Dkt. Nos. 153-154. As part of their reply, Plaintiffs attached a Declaration of Leslie T. Kobata (Kobata), the Assistant Registrar of the Land Court for the State of Hawaiʻi. Dkt. No. 154-1. A few days later, PNC Bank moved to strike Plaintiffs' reply on the ground that it relied

on evidence not submitted with the motion for reconsideration, or, alternatively, for leave to file a sur-reply ("the motion to strike"). Dkt. No. 155. On March 21, 2019, Plaintiffs filed an opposition to the motion to strike. Dkt. No. 156.

## **LEGAL STANDARD**

The Court may relieve a party from a final judgment or order for, *inter alia*, "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)[.]" Fed.R.Civ.P. 60(b)(2). A Rule 60(b) motion must be filed within a reasonable time, and, when relying on subsection (2), "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed.R.Civ.P. 60(c)(1).

A party moving under Rule 60(b)(2) must show that the evidence relied upon "(1) existed at the time of the trial, (2) could not have been discovered through due diligence, and (3) was of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990).

When an appeal is pending and a timely motion for relief has been made, a district court may "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed.R.Civ.P. 62.1(a).

## **DISCUSSION**

Plaintiffs' motion for reconsideration states that it is "based upon the discovery of new evidence…." Dkt. No. 151 at 1. In their opening memorandum, Plaintiffs, in fact, bold and italicize that part of Rule 60(b) pertaining to newly discovered evidence. Dkt. No. 151-1 at 2.[2] The opening memorandum is, thus, notable by what it fails to discuss: the standard for relief under Rule 60(b)(2). Read naturally, the opening memorandum suggests that there is no such standard beyond a party stumbling upon some evidence they wish they had encountered earlier. Reality, however, is far different. A party is only entitled to relief under Rule 60(b)(2) if they show that the evidence relied upon "(1) existed at the time of the trial, (2) could not have been discovered through due diligence, and (3) was of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Jones*, 921 F.2d at 878.

*Not one of these prerequisites is even mentioned in Plaintiffs' opening memorandum.* That is reason alone to deny Plaintiffs the relief they seek. Due diligence is perhaps the most obvious problem with Plaintiffs' motion, illustrated by the following example. In the opening memorandum, it is asserted that

---

[2]In the opening memorandum, Plaintiffs also bold and italicize Rule 60(b)'s catchall provision – Rule 60(b)(6). Why they do this is entirely unclear, given that, at no point in their briefing, do Plaintiffs even say that Rule 60(b)(6) is relevant to the reconsideration they seek.

Plaintiffs' certificates of title were not available when they opposed summary judgment and, "at some time after" summary judgment, Plaintiffs' certificates of title became available.   Conceivably, these assertions pertain to the issue of diligence.   But instead of explaining how, Plaintiffs shirk their burden, relying instead on their imprecision and leaving it to the Court to discern whether discovery "some time after" satisfies their diligence obligation under Rule 60(b)(2).   This Court rejects any suggestion that counseled litigants can abandon their responsibility to present their argument in the context of the applicable governing law.   This is precisely what Plaintiffs have done with their motion for reconsideration.

Things are little better in the reply memorandum.   Again, Plaintiffs refuse to acknowledge that there is an actual legal standard for analyzing evidence relied upon for purposes of Rule 60(b)(2).   Instead, Plaintiffs indicate the importance they attach to the fundamental standard for the relief they seek when they contemptuously state that PNC Bank's more-than-valid arguments in opposition– that the opening memorandum failed to explain how Plaintiffs' certificates of title constituted evidence in existence at the time of judgment or how Plaintiffs had exercised due diligence–are "post-hoc" "red herrings."   What Plaintiffs mean by "post-hoc" in this context is entirely unknown.   Moreover, how discussion of two

of the three prerequisites for Rule 60(b)(2) relief can be considered "red herrings"

is beyond the Court.

Nevertheless, despite Plaintiffs' refusal to explain why they are entitled to

relief under Rule 60(b)(2), because it is important to set forth why they have not

acted with the proper diligence, the Court will address the arguments Plaintiffs

relegate to the end of their reply memorandum.[3]

As mentioned above, at summary judgment, PNC Bank argued, among other

things, that the relief Plaintiffs sought in this action was barred by the operation of

Hawai'i law requiring those who wish to impeach a foreclosure proceeding to do

so before entry of a new certificate of title for the subject property.   PNC Bank

asserted that a new certificate of title was "issued and entered" on May 13, 2010,

with respect to a property upon which Fergerstrom had executed a mortgage in

favor of PNC Bank's predecessor ("the Fergerstrom Property").   PNC Bank

further asserted that a new certificate of title was "issued and entered" on April 15,

2010, with respect to a property upon which the Kaiamas had executed a mortgage

in favor of PNC Bank's predecessor ("the Kaiama Property").   In support of these

arguments and factual assertions, PNC Bank submitted the PNC certificates of

---

[3]It is not necessary for PNC Bank to file a sur-reply, as the Court can address the relevant
arguments in Plaintiffs' reply without further briefing.   As a result, PNC Bank's request to file a
sur-reply is DENIED AS MOOT, and the request to strike the reply is DENIED.

title, as described earlier.    On the face of each of the PNC certificates of title is the word "Issued" followed by a date in numeric form.    Dkt. Nos. 102-6, 102-8, 102-11, 102-13.

In opposing this particular argument, Plaintiffs asserted that PNC Bank had failed to establish when the PNC certificates of title had been entered.    Although Plaintiffs did not expressly address the "Issued" date on the PNC certificates of title, they argued that PNC had not established whether this action was filed after entry of the PNC certificates of title or "merely" after the assignment of a number for the PNC certificates of title.    In support of these arguments, Plaintiffs offered no evidence.    Instead, they asserted that, in a different case involving different litigants, the Supreme Court of Hawaiʻi had stated that "the Office of the Assistant Registrar of the Land Court at that time was nearly four years behind in physically producing and certifying new certificates of title for properties registered in the Land Court system."    Dkt. No. 117 at 9 (quotation, emphasis, and citation omitted).    Plaintiffs asked for the Court to take judicial notice of the above quote for the purpose of opposing PNC Bank's argument.    Dkt. No. 118 at ¶¶ 7, 8, 15, 17.    In ruling on summary judgment, the foregoing was the pertinent record and arguments before the Court.

Pursuant to Federal Rule of Civil Procedure 56(c), a party asserting that a genuine dispute of material fact exists or does not exist must support that assertion either by (A) citing to particular parts of materials in the record, or (B) showing that the materials upon which the opposing party relies do not establish the absence or presence of a genuine dispute.  Plaintiffs demonstrably took the latter approach. They did not cite to any materials in the record, but, instead, argued that the PNC certificates of title did not establish the absence of a genuine dispute because the certificates did not show when they were entered.  This argument, however, was based purely upon speculation.  Specifically, the speculation that the PNC certificates of title "merely" showed when the number of the respective certificate was issued.  Instead of citing evidence to support this proposition, Plaintiffs simply quoted a passage from *Wells Fargo Bank, N.A. v. Omiya*, 420 P.3d 370 (Haw. 2018).

Undoubtedly, there is a difference between the issuance/entry of a certificate of title and the assignment/issuance of a number corresponding to the same certificate of title.  *See id*. at 386 ("assignment of a new [transfer certificate of title] number does not demonstrate that a new certificate of title has been duly prepared and entered.").  Plaintiffs, though, failed (and still fail) to comprehend that the facts of *this case* are not the same as those in *Omiya*.  Most notably, in

*Omiya*, the Supreme Court of Hawai'i was faced with lower court decisions

finding that a recorded quitclaim deed stamped with an assigned number

constituted a new certificate of title.   *Id*. at 384.   The Supreme Court concluded

that the assignment (or issuance) of a number to a recorded deed did not constitute

entry (or issuance) of a new certificate of title because the assigned number

possesses none of the statutory characteristics of a certificate of title.   *See id*. at

382 ("Thus, a new certificate of title has information referencing the original

registration, the owner's name, a description of the property, and a summary of

encumbrances.   None of this information is contained in a [transfer certificate of

title] number.").

    As this Court explained in the September 18 Order, the evidence here clearly

showed that this case did not involve the mere assignment of a number to a

recorded instrument as in *Omiya*:

> The summary judgment record here is far more robust than what was
> present in *Omiya*.   Here, the record includes the actual certified Land
> Court [transfer certificates of title] for the Fergerstrom and Kaiama
> Properties, Exs. K, M, P, and R, signed by the Assistant Registrar,
> which indicate the date of registration or cancellation of the prior
> certificate of title, as well as the owner's name, a description of the
> property, and a summary of encumbrances, as required by statute and
> rule.   The [transfer certificates of title] were issued and entered as of
> the date indicated on the face of each certified copy presented–that is,
> they do not reflect the mere issuance of the number of the certificate
> of title.

September 18 Order at 27-28, Dkt. No. 140.   The quoted passage from *Omiya* upon which Plaintiffs relied at summary judgment, therefore, simply did not apply to the facts of this case.

The only other argument that Plaintiffs made as to why the PNC certificates of title did not establish the absence of a genuine dispute was yet another selectively quoted passage from *Omiya*.   As framed by Plaintiffs, they wanted this Court to take judicial notice of the following statement in *Omiya*: "there was a backlog of nearly four years at the Land Court in certifying new certificates of title for properties registered in Land Court."   *See* Dkt. No. 118 at ¶¶ 7, 8, 15, 17.

Because there were (and still are) so many problems with the foregoing request, some of which are discussed below, the Court did not mention the same in the September 18 Order.   In their instant opening memorandum, Plaintiffs observe the Court's failure to mention the request for judicial notice.   Dkt. No. 151-1 at 10.   Given that Plaintiffs clearly believe that their request is (or was) important to their arguments, the Court will now take this opportunity to explain why their faith was misplaced.

First, the quoted passage is taken out of context, not the least because it is not even the full *sentence* in which it appears.   The full sentence is:   "*According to the Furukawa Declaration*, there was a backlog of nearly four years at the Land

Court in certifying new certificates of title for properties registered in Land Court."

*Omiya*, 420 P.3d at 383 (emphasis added). In other words, the Supreme Court of Hawaiʻi did not determine that there was a backlog in the Land Court, as Plaintiffs' selective quotation implies. Instead, the contention that there was a nearly four-year backlog in the Land Court was part of the testimony submitted by one of the litigants or witnesses in *Omiya*.

Second, neither in their summary judgment opposition nor in their instant briefing have Plaintiffs ever explained how, under the applicable evidentiary rule, this Court could take judicial notice of the quoted passage. Much like Plaintiffs' aversion to acknowledging the existence of a legal standard for the instant motion for reconsideration, this was sufficient alone to reject their request for judicial notice, *see Newman v. San Joaquin Delta Cmty. Coll. Dist.*, 272 F.R.D. 505, 516 (E.D.Ca. 2011) ("a party requesting judicial notice bears the burden of persuading the trial judge that the fact is a proper matter for judicial notice").

Third, if Plaintiffs had consulted the applicable evidentiary rule–Federal Rule of Evidence 201–they would have observed that only *adjudicative* facts are judicially noticeable. *See* Fed.R.Evid. 201(a). This is perhaps why Plaintiffs declined to explain why the quoted passage should be noticed because there is nothing *adjudicative* about the passage from *Omiya* or the purported facts

contained in the passage.  *See* Fed.R.Evid. 201(a) advisory comm. notes (1972)

("When a court or an agency finds facts concerning the immediate parties–who did

what, where, when, how, and with what motive or intent–the court or agency is

performing an adjudicative function, and the facts are conveniently called

adjudicative facts.").  The Supreme Court of Hawaiʻi made no fact-finding with

respect to a nearly four-year backlog in the Land Court, when that purported

backlog began or ended, or the scope of the backlog, these purported facts did not

concern the immediate parties in *Omiya* (or this case), nor did these purported facts

involve "what, where, when, how, [or] … motive…."

    Fourth, courts can, of course, also take judicial notice of public records.

*Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).  But this too would

have been of no assistance to Plaintiffs.  That is because "when a court takes

judicial notice of another court's opinion, it may do so not for the truth of the facts

recited therein, but for the existence of the opinion, which is not subject to

reasonable dispute over its authenticity."  *Id*. at 690 (quotation omitted);[4] *see also*

*Uyeda v. Schermer*, __ P.3d __, 2019 WL 1254695, at *8 (Haw. Mar. 19, 2019)

---

[4]*Lee* involved motions to dismiss under Federal Rule of Civil Procedure 12(b), *Lee*, 250 F.3d at 678-679, but its reasoning is equally applicable to a motion for summary judgment, *see Rezentes v. Sears, Roebuck & Co.*, 729 F. Supp. 2d 1197, 1206 (D. Haw. 2010) (denying a request for judicial notice at summary judgment, and noting that, "[i]f the court took such notice, it would only notice the existence of the documents, not notice any facts asserted in the documents as true.").

("Factual allegations, conclusions, and findings, whether authored by the court, by the parties or their attorneys, or by third persons, should not be noticed to prove the truth of the matters asserted even though the material happens to be contained in court records.") (quotation and citation omitted).   Thus, here, although in their summary judgment opposition Plaintiffs did not explain whether they wanted the quoted passage from *Omiya* noticed for its truth or simply for its existence, the Court could not do the former, and the latter would have been of no relevant use.[5]

This is why it was incumbent upon Plaintiffs to provide and cite materials supporting their assertion that a genuine dispute existed as to when the PNC certificates of title were issued because Plaintiffs' reliance on judicial notice did not carry the burden that had shifted to them.   *See* Fed.R.Civ.P. 56(c); *see also M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir.

_____

[5]Obviously, Plaintiffs wished the quoted passage (and, more importantly, the purported facts therein) to be noticed for its/their truth.   In other words, Plaintiffs wanted this Court to accept as true that there was a nearly four-year backlog in the Land Court.   Apart from the fact that nothing in *Omiya* even states that the facts contained in the quoted passage were, in fact, true, even if they were, the Court could not notice them for that purpose in this case.

[6]The Court also notes that, even if it was willing to assume the truth of there being a nearly four-year backlog in the Land Court, *in this case*, that purported truth is not the quick fix that Plaintiffs appear to believe it to be.   As Plaintiffs asserted in their summary judgment opposition, Fergerstrom filed the original complaint in this case on September 9, 2013–less than three and a half years after the "Issued" dates on the applicable PNC certificates of title.   As far as this Court is concerned, "nearly four years" and "less than three and a half years" are far too sufficiently proximate for any conclusion to be reached that the alleged backlog in the Land Court affected the PNC certificates of title in a relevant way.   Instead, Plaintiffs would need to have presented actual evidence that the backlog affected the PNC certificates of title such that they could not have been issued on the date that appears on the face of those documents.

1983) ("As a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it.").

Here, the principal issue concerned when the PNC certificates of title were issued.[7]   In the absence of any conflicting evidence, the PNC certificates of title provided this fact on their face, as they each state "Issued" followed by the applicable date.[8]   As discussed above, Plaintiffs did not submit any evidence in conflict with the PNC certificates of title.   Therefore, as the Court found in the September 18 Order, the PNC certificates of title were "issued and entered as of the date indicated on the face of each certified copy presented…."   September 18 Order at 27-28.

---

[7]So the Court's words are not misinterpreted, by "issued" the Court also means "entered."   In their instant briefing, Plaintiffs assert that it is "plain" from *Omiya* that issuance and entry of a certificate of title are not the same thing.   Dkt. No. 154 at 16.   Plaintiffs do not cite to any part of *Omiya* for this alleged "plain" meaning, which is understandable, given that it is plain from *Omiya* that issuance and entry of a *certificate of title* are the same thing.   *See Omiya*, 420 P.3d at 385 ("The certifying process is key to the *issuance* of a new certificate of title…."; "If the statutory determinative point when title becomes unimpeachable is to be made effective prior to the *issuance* of a certificate of title, it must be the result of legislative amendments to HRS Chapter 501, and not of a change in practice of the Land Court.") (emphasis added).   What Plaintiffs may mean is that issuance of an *assigned number* is not the same as issuance of a certificate of title.   *See id*. at 384.   As explained above and in the September 18 Order, though, this case does not involve the mere issuance of an assigned number.

[8]To the extent Plaintiffs believed otherwise, on their face, the PNC certificates of title do not state when their corresponding deeds or other recorded instruments were assigned a number.

Plaintiffs now attempt to have the summary judgment record reassessed in light of what they describe as newly discovered evidence–Plaintiffs' certificates of title. As discussed earlier, their briefing does not come close to satisfying the Rule 60(b)(2) standard. For now, though, the Court will focus on the evidence Plaintiffs have submitted. Perhaps the most notable thing about Plaintiffs' certificates of title is that they are almost *identical* to the PNC certificates of title, *except*, in each instance, one relevant respect. The only relevant difference between the two sets of certificates is that, in Plaintiffs' certificates of title, there has been added a date (in numerical form) under the electronic signature of the Assistant Registrar. *Compare* Dkt. Nos. 151-3 to 151-6, *with* Dkt. Nos. 102-6, 102-8, 102-11 & 102-13.[9] None of the PNC certificates of title have this date under the Assistant Registrar's signature.

At no point do Plaintiffs discuss in their opening memorandum what these newly added dates mean. Instead, it is simply asserted that Plaintiffs' certificates

---

[9]The only other difference that this Court can discern across the two sets of certificates of title is in the certificate of title "Issued: 09/02/2011." In Plaintiffs' version of this certificate, Dkt. No. 151-6, in a box directly under the "Issued" date, there is a line that reads: "**** LCO MARRIAGE & DEED 7/6/18 ****[.]" This line does not exist in the PNC Bank version of the same certificate. *See* Dkt. No. 102-13. The PNC Bank version, though, in the same box, contains a line that reads: "Transferred from Certificate #: 978781[.]" *Id.* This line does not exist in Plaintiffs' version. *See* Dkt. No. 151-6. Neither party mentions or relies on these differences in bringing their respective arguments. As a result, the Court does not further address the same.

of title were entered on dates different than the ones found in the September 18

Order.  *See* Dkt. No. 151-1 at 6-7.   In addition, apart from a declaration by

Plaintiffs' counsel that simply restates the newly added dates on Plaintiffs'

certificates of title, *see* Dkt. No. 151-2 at ¶¶ 7-10, no explanation is provided as to

why the inference should be drawn that the newly added dates warrant

reconsidering any relevant decision in the September 18 Order.

This task is left for Plaintiffs' reply memorandum.   As a procedural matter,

why Plaintiffs should be allowed to leave all the heavy-lifting for the relief they

seek until their *reply* memorandum is beyond the Court.   As is clearly evidenced

by Plaintiffs' briefing in this case, at the very least, any condoning of such a

practice not only leads to sloppy lawyering, but to a violation of LR7.4.   As a

substantive matter, though, even at this very late stage, Plaintiffs' reply

memorandum does not cure the deficiencies of their request.

The principal continuing problem with Plaintiffs' request is that, even with

the evidence they have submitted with their reply memorandum, they have clearly

shown a lack of due diligence.   With their reply memorandum, Plaintiffs have

submitted, *inter alia*, a declaration from Kobata (Kobata Declaration).   Therein,

Kobata, who is the Assistant Registrar of the Land Court, clarifies at least one of

the unknowns from the original submission of Plaintiffs' certificates of title, as she

states that the newly added dates under the signature of the Assistant Registrar are the dates when the respective certificate of title was entered in the Land Court records. *See* Kobata Decl. at ¶ 2, Dkt. No. 154-1.

In their reply memorandum, Plaintiffs assert that the Kobata Declaration also establishes that the newly added dates were not in the public record until December 2018 or January 2019. Putting aside that the Kobata Declaration was submitted six weeks after the filing of the motion for reconsideration, Plaintiffs' assertion in this regard misses the point. Ever since Plaintiffs filed their opposition to PNC Bank's motion for summary judgment, they have maintained that the "Issued" date on the PNC certificates of title did not mean that the PNC certificates of title were entered on that date. *See infra*. To support this argument, Plaintiffs could have easily submitted evidence. As an obvious example, Plaintiffs could have deposed or sought to obtain a declaration from an employee, such as the Assistant Registrar, of the Land Court, as they have now done. At such a deposition, or in such a declaration, the employee could have stated what the "Issued" date on the PNC certificates of title meant. Did it mean the date the respective PNC certificate of title was issued and entered by the Land Court? Or, did it mean the date when a number was assigned and issued to an instrument recorded with the Land Court?[10]

_____

[10]If the answer to the latter question had been affirmative, an obvious follow-up question would

19

Why Plaintiffs did not pursue this straightforward discovery procedure is a mystery to the Court.[11]  It has *never* been explained by Plaintiffs.

Instead, Plaintiffs try to muddy the waters by arguing that the newly added information in their certificates of title only became available a few months ago. Essentially, Plaintiffs argue that, although they relied on speculation and a frivolous request for judicial notice, rather than pursuing a routine discovery procedure to support their summary judgment argument, because they believe conclusive evidence has now fallen into their laps, they should be excused for what they have done (or, more accurately, not done) in the past.  This Court disagrees. Rule 60(b)(2) is a device for litigants who, *inter alia*, have acted with reasonable diligence.  It is *not* a device to remedy a litigant's failure to act diligently in pursuing discovery of *any* evidence that would have supported their summary judgment argument, at least not when the ability to obtain such evidence was patently available.  *See Parilla-Lopez v. United States*, 841 F.2d 16, 19 (1st Cir. 1988) (explaining that a policeman's testimony was not newly discovered because, although the litigant was aware, before trial, of the policeman's identity and

---

have been: When were each of the PNC certificates of title entered?  Undoubtedly, an employee such as the Assistant Registrar could have answered this question *for the same reason the Assistant Registrar is able to answer it in the Kobata Declaration*–the Office of the Assistant Registrar obviously knows when it has entered certificates of title.

[11]The Court notes that Plaintiffs did not seek Fed.R.Civ.P. 56(d) relief when opposing PNC Bank's summary judgment motion.

knowledge of the pertinent accident, the litigant made a "conscious decision on trial strategy" that "the cost of tracking down the policeman in New York City outweighed the potential benefit of the policeman's live testimony."); *Schlicht v. United States*, 2006 WL 229551, at *2 (D. Ariz. Jan. 30, 2006) ("due diligence assumes at least some level of deductive reasoning in an active effort to discover evidence based on the knowledge and information already possessed by the litigants.").

For all of the foregoing reasons, the Court finds that Plaintiffs did not act with the due diligence called for by Rule 60(b)(2), and thus, DENIES the motion for reconsideration.[12]

---

[12]Although this Order does not rely on the following, the Court makes one final point. Under Rule 60(b)(2), a party must also show that any newly discovered evidence is "of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Jones*, 921 F.2d at 878. Arguably, Plaintiffs' certificates of title combined with the Kobata Declaration satisfy this standard. The Court, however, is troubled by at least one problem with any such finding, which neither party has addressed. Under the statute creating the Land Court system, as well as the Land Court's rules, a certificate of title may not be altered or amended except "by order of the court recorded with the assistant registrar" or to "correct any clerical error made by personnel of the registrar's or assistant registrar's office." Haw. Rev. Stat. § 501-196; Rules of the Land Court Rule 65(a). Here, there is no dispute that the PNC certificates of title were duly certified copies of the certificates for the Fergerstrom and Kaiama Properties. *See* Dkt. No. 151-1 at 6 (stating that "PNC obtained a certified copy of certificates for the Fergerstrom and Kaiama properties" for use with PNC Bank's motion for summary judgment). Nor could there be any dispute of the same, given that the PNC certificates of title are duly sealed, signed, and certified. *See* Haw. Rev. Stat. § 501-88 (providing that a copy of any certificate of title may be used as evidence in any court of the State of Hawai'i if the same is "duly certified under the signature of the registrar or assistant registrar, and the seal of the

# CONCLUSION

The motion for reconsideration, Dkt. No. 151, is DENIED.   The motion to strike, Dkt. No. 155, is DENIED with respect to the request to strike Plaintiffs' reply and DENIED AS MOOT with respect to the request to file a sur-reply.

IT IS SO ORDERED.

---

court…").   As such, the PNC certificates of title are "conclusive as to all matters contained therein," *see id*., including, as explained in the September 18 Order, with regard to when the same certificates were issued and entered.   Now, however, the Court has been presented with Plaintiffs' certificates of title, which, on their face, appear to concern the same properties as the PNC certificates of title, i.e., the Fergerstrom and Kaiama Properties.   Therein, each of Plaintiffs' certificates of title *add* a date under the Assistant Registrar's signature.   As a result, because it is not disputed that Plaintiffs' certificates of title were created *after* the PNC certificates of title, *see* Dkt. No. 154 at 15 (asserting that Plaintiffs' certificates of title "were not placed in the public record by the Land Court until December 2018 or January 2019") (emphasis omitted), Plaintiffs' certificates of title undoubtedly *alter* the PNC certificates of title, *see* Dkt. No. 151-1 at 6 (describing the Land Court as "altering" certificates of title).   According to Section 501-196, such alterations can *only* occur if the Land Court orders the same or if the same involves the correction of a clerical error made by personnel of the assistant registrar's office. Plaintiffs have not provided any evidence or made any argument that either has occurred. Rather, the Kobata Declaration appears to suggest that "[t]he Office of the Registrar of the Land Court" has taken this task upon itself and for reasons unrelated to the mere ministerial correction of a clerical error.   *See* Kobata Decl. at ¶ 3.   Although the Court need not conclusively reach a finding in this respect, the Court strongly doubts that the addition of the dates under the Assistant Registrar's signature can be considered a "clerical error."   This is not the least because, as explained earlier, without resort to the Kobata Declaration, there is no way to know what the recently added dates mean absent speculation.   *See* Black's Law Dictionary 659 (10th ed. 2014) (defining "clerical error" as "[a]n error from a minor mistake or inadvertence and not from judicial reasoning or determination; esp., a drafter's or typist's error that can be rectified without serious doubt about the correct reading.").   The practical effect, were the Court to find that Plaintiffs' certificates of title do not correct a clerical error, is that, under the circumstances presented, the Court would only consider the PNC certificates of title for purposes of summary judgment in this case because "[n]o erasure, alteration, or amendment" can be made to the PNC certificates.   Given that the Court has already done just that in the September 18 Order, the disposition of this case would not change.

Dated: April 5, 2019 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge